**Linda ZIMMERMAN, Plaintiff,**

v.

**GENERAL MOTORS, DELPHI ENERGY & ENGINE MANAGEMENT SYSTEM DIVISION, Defendant.**

**Civil Action No. 96–2104–EEO.**

United States District Court, D. Kansas.

March 21, 1997.

Luis Mata, Evans & Mullinix, P.A., Kansas City, KS, C. David Whipple, Mark D. Chuning, Whipple Law Firm, P.C., Kansas City, MO, for plaintiff.

Rosalee M. McNamara and Charles J. Williams, Lathrop & Gage L.C., Kansas City, MO, for General Motors Corporation.

Rosalee M. McNamara and Charles J. Williams, Lathrop & Gage L.C., Kansas City, MO, for Delphi Energy & Engine Management System Division.

EARL E. O'CONNOR, Senior District Judge.

### MEMORANDUM AND ORDER

Pending before the court is Defendant's Motion for Summary Judgment (Doc. # 60). Plaintiff's complaint involves a claim of employment discrimination in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. S § 12101 et seq. Defendant's motion for summary judgment argues that plaintiff has failed to meet any of the three elements of the ADA, including failure to qualify as disabled as defined by the ADA, failure to show that defendant's accommodations were not reasonable, and failure to show that defendant's actions were based upon any discriminatory intent. For reasons set forth below, defendant's motion for summary judgment (Doc. # 60) will be granted.

### I. Facts.

The following facts are either uncontroverted or, if controverted, construed in the light most favorable to the plaintiff. Plaintiff Linda Zimmerman began working at defendant General Motor's ("GM's") battery manufacturing plant in 1974. She was still working for defendant at the time this action was filed. In April 1991, plaintiff began working on a cast-on strap machine. While working the cast-on strap machine in June 1991, plaintiff suffered an injury to both her arms and shoulders as a result of the repetitive pinching and gripping of lead plates. Plaintiff's physician imposed a restriction on plaintiff preventing her from performing work that required repetitive pinching and gripping of lead plates. Plaintiff began a six-month leave of absence shortly after this injury occurred.

In January 1992, plaintiff returned to defendant's plant in the position of battery inspector. Defendant added a stop button to the battery inspection conveyor as a result of plaintiff's request. Defendant was asked to investigate the possible installation of a "push off" device for the battery inspection line where plaintiff worked to remove those batteries that failed inspection from the conveyor line. This modification would allow the battery inspector to avoid pushing heavy batteries off the conveyor manually. Defendant evaluated the request, but no "push off" device was installed. Plaintiff complained that the battery inspection job was hurting her arms, especially when rejecting several hundred batteries in a day. She asked for and received a leave of absence from the battery inspector position in August 1992. Defendant's physician evaluated plaintiff on August 31, 1992, and concluded that she was "disabled as to flexing wrists and fingers."

While plaintiff was on leave from the battery inspection position, an inspector/receiving position opened up at defendant's plant. Under the terms of the Collective Bargaining Agreement between defendant and the UAW, which represented the plaintiff, plaintiff was not eligible for the position because she was on a leave of absence. If plaintiff had been working at the plant when the position was open, she would have been con-

sidered for the position. Defendant approached the UAW and requested that the eligibility requirement be waived to allow plaintiff to fill the inspector/receiving position, but the union denied the request. Both the defendant and the union acted in conformance with the collective bargaining agreement. The inspector/receiving position was given to another employee with less seniority, but who was working at the time the position was open.

Plaintiff returned from her leave of absence on February 8, 1993, to a laborer/janitor position. Dennis Tyree, personnel director, and Frank Tubbs, supervisor of the laborer/janitor position, advised plaintiff that arrangements would be made in the assignment of tasks in recognition of her medical restrictions. The primary responsibility of this position was pushing a broom. Upon encountering difficulty in pushing a broom, plaintiff informed her supervisor, who instead of reassigning the task, told plaintiff that there were other ways to push a broom. Plaintiff requested and received another leave of absence on February 10, 1993.

Beginning on March 15, 1993, through the filing of this action, plaintiff has been employed in positions on the wafer machine, on the spin line,[1] in shipping and receiving on a temporary fill-in basis, and as a UAW benefits representative. Plaintiff performed these jobs without any dispute about her abilities to perform their necessary functions. Plaintiff's pay was not reduced during any of the job changes described above.

In 1993 or 1994, defendant offered a fill-in position in the shipping and receiving area to another employee with less seniority than the plaintiff, despite plaintiff's announced interest in the position. When the other employee accepted the position, plaintiff complained. Plaintiff was then placed in the position until the permanent employee returned from vacation.

Defendant had a policy for balancing of overtime hours to ensure that each employee in a department had an opportunity to work close to the same amount of overtime. Plain-

tiff's overtime hours were not balanced with others of her same job classification for approximately one year after she took the UAW benefits representative position. The previous incumbent had not requested or worked overtime in positions in the plant. Plaintiff complained to her union representative, who contacted plaintiff's supervisor. Her supervisor investigated the situation and determined that plaintiff did have a right to have her hours balanced. Defendant began balancing plaintiff's hours.

### A. The Americans with Disabilities Act.

To qualify for relief under the ADA, a plaintiff must demonstrate (1) she is disabled within the meaning of the ADA, (2) she is able to perform the essential functions of the job, with or without accommodation, and (3) the employer discriminated against her on the basis of her disability. *White v. York*, 45 F.3d 357, 360–61 (10th Cir.1995). The ADA states "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (1994). The definition of "covered entity" includes employers. 42 U.S.C. § 12111(2) (1994). "The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8) (1994). "The term 'disability' means, with respect to the individual—(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2) (1994).

---

1. Interestingly, the spin line position, which plaintiff took in May or June 1994, was addressed in a memo from defendant's staff physician dated April 5, 1993. In that memo, Dr.

Delphia listed the 1200 spin line among four positions that plaintiff should NOT perform, due to her medical restrictions and numerous injuries.

## II. *Summary Judgment Standards.*

In reviewing a motion for summary judgment, the court must examine all of the evidence in the light most favorable to the nonmoving party. *Jones v. Unisys Corp.*, 54 F.3d 624, 628 (10th Cir.1995). A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c). *Accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986), *Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533, 536 (10th Cir. 1995). If the moving party does not bear the burden of proof at trial, it must show an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). The inquiry as to whether an issue is genuine is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2512. An issue of fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. This inquiry necessarily implicates the substantive evidentiary standard of proof that would apply at trial. *Id.* at 252, 106 S.Ct. at 2512.

Once the moving party meets the burden of showing an absence of genuine issues of material fact, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial. *Applied Genetics Int'l. Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990). The nonmoving party may not rest on her pleadings, but must set forth specific facts "as to those dispositive matters for which it carries the burden of proof." *Id.*

To succeed with its motion for summary judgment, defendant must therefore demonstrate that the plaintiff lacks evidence to support a prima facie showing of the three elements of her ADA claim. Accordingly, defendant (1) questions plaintiff's ability to meet the definition of disabled under the ADA, (2) argues that defendant's accommodations were reasonable and therefore shield the defendant from liability under the ADA, and (3) argues that plaintiff does not show that the defendant's actions were linked to discrimination based upon plaintiff's alleged disability. If defendant is successful, plaintiff must then provide specific facts to support that genuine issues of material fact do exist.

## III. *Discussion.*

### A. *Plaintiff is not disabled under the ADA.*

Plaintiff provides evidence of three physical impairments: fibromyalgia, chronic back problems, and a work-related condition resulting in pain in the upper extremities. To qualify as a disability under ADA, an impairment must substantially limit one or more major life activities. "Major life activities" is defined in the regulations implementing the ADA to encompass "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i) (1996). Plaintiff provides evidence that medical restrictions were placed upon her by GM prior to 1991 to limit her lifting to 30 pounds, and in June 1991 to limit "repetitive pinching and gripping of lead plates." Further, plaintiff provides deposition testimony that she has difficulty performing tasks, including cleaning her house, buttoning buttons, and certain job functions at GM. Defendant argues that plaintiff, through her deposition testimony, waived any claim based upon fibromyalgia or her back injuries. Defendant further argues that plaintiff's impairment of her hands, arms and shoulders does not rise to the level of a disability under the ADA.

"Substantially limits" is defined as "(i) [u]nable to perform a major life activity that the average person in the general population can perform; or (ii)[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1) (1996). The factors that should be considered in determining whether an individual is substantially limited

in a major life activity are: "(i) [t]he nature and severity of the impairment; (ii)[t]he duration or expected duration of the impairment; and (iii)[t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2). Specifically addressing the major life activity of working, the code provides additional definitions and factors:

With respect to the major life activity of working—(i) [t]he term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working. (ii) In addition to the factors listed in paragraph (j)(2) of this section, the following factors may be considered in determining whether an individual is substantially limited in the major life activity of "working": (A) The geographical area to which the individual has reasonable access; (B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or (C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3).

Defendant has shown that plaintiff's limitations did not rise to the level of "disability" by demonstrating that plaintiff's major life activity of work is not substantially limited. Plaintiff has failed to address the specific factors provided in the regulations and failed to provide any evidence that she was prevented from engaging in a wide class of jobs within her geographic area utilizing similar training. To the contrary, plaintiff has demonstrated that there are a number of jobs within defendant's own facility that she is capable of performing. She has in fact actually functioned without difficulty in several positions following her injury on the cast-off machine, including operating the wafer machine and the spin line, and as UAW benefits representative.

B. *Plaintiff is able to perform the essential functions of the job, with or without accommodation.*

■ Even if plaintiff had provided sufficient evidence to support a finding that she met the ADA definition of person with a "disability," she fails to counter defendant's evidence that it offered reasonable accommodation. The Tenth Circuit has adopted a two-part analysis for use when determining whether a disabled individual is qualified under the ADA:

First, we determine whether the individual could perform the essential functions of the job.. Second, if (but only if) we conclude that the individual is not able to perform the essential functions of the job, we must determine whether any reasonable accommodation by the employer would enable him to perform those functions.

*Hudson v. MCI Telecommunications Corp.,* 87 F.3d 1167, 1168 (10th Cir.1996) (quoting *White v. York Int'l Corp.,* 45 F.3d 357, 361–62 (10th Cir.1995)).

Essential functions are defined in 29 C.F.R. § 1630.2(n) (1996) to mean "the fundamental job duties of the employment position the individual with a disability holds or desires." There is little argument that pinching and gripping of lead plates is an essential function of the cast-on strap position. Further, pushing rejected batteries from the conveyor is clearly an essential function of the inspector position. Finally, pushing of a broom seems to clearly be the primary function of the laborer/janitor position. However, the issue of reasonable accommodation is disputed.

Reasonable accommodation in this situation means "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that

enable a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. § 1630.2(*o*)(1)(ii) (1996). Reasonable accommodation may include but is not limited to "[j]ob restructuring; part-time or modified work schedules; reassignment to a vacant position; acquisition or modifications of equipment or devices ... and other similar accommodations for individuals with disabilities." 29 C.F.R. § 1630.2(*o*)(2) (1996). "To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(*o*)(3).

■ A leave of absence may be considered as a reasonable accommodation. *Hudson v. MCI Telecommunications Corp.,* 87 F.3d 1167, 1168 (10th Cir.1996). But, an employer is not required to grant an employee an indefinite leave of absence as an accommodation. *Id.,* at 1169.

■ Neither is the covered entity required to make any accommodation, just reasonable ones. A covered entity is not required to endure undue hardship, defined as "significant difficulty or expense incurred by a covered entity." 29 C.F.R. § 1630.2(p)(1). Further, an employer is not required "to give an employee the best accommodation or the accommodation requested by the employee, so long as the accommodation made is reasonable." *Burnett v. Western Resources,* 929 F.Supp. 1349, 1359 (D.Kan.1996). The employer providing the accommodation has the ultimate discretion of choosing between alternative accommodations. *Kuehl v. Wal–Mart Stores, Inc.,* 909 F.Supp. 794, 803 (D.Colo. 1995).

Defendant has presented evidence that it provided reasonable accommodation when it reassigned plaintiff to positions where she was able to perform the essential functions. Defendant evaluated the potential of automated push-off of rejected batteries. Defendant provides evidence that due to safety, space and cost concerns, the push-off device was not developed. Plaintiff has presented

no specific facts to refute defendant's evidence. Plaintiff was left with the responsibility for manually pushing reject batteries from the conveyor, which she admits was only a problem when high numbers of rejections occurred. When she complained of pain, defendant allowed a leave of absence and then reassigned her to another position upon her return.

Defendant's staff physician evaluated several positions in light of plaintiff's limitations and excluded her from four particular positions in the plant. Other positions remained open to her, at no reduction in pay. Although plaintiff did not have her choice of any position in the plant, defendant was not obligated by the ADA to provide such accommodation to the plaintiff. Defendant was only required to make reasonable accommodations for plaintiff's limitations. Reassignment into open positions and the granting of leaves of absence are reasonable accommodations.

Defendant having made accommodations, the burden now shifts to the plaintiff to show that defendant's actions were not reasonable accommodations. Plaintiff, having failed to offer evidence rebutting defendant's evidence that the accommodations were reasonable, fails to meet this burden. Defendant repeatedly responded to plaintiff's complaints by offering job transfers and leaves of absence.

C. *Defendant did not discriminate against plaintiff on the basis of her alleged disability.*

■ Even if plaintiff was successful in establishing that she was disabled according to the ADA and that she could perform the essential functions of her job, with or without accommodation, she fails to provide specific facts that demonstrate that defendant discriminated against her on the basis of her disability.

Plaintiff cites several incidents where she believes the defendant discriminated against her. The first involved placing plaintiff in the battery inspector position despite her job-related injury suffered on the cast-off machine. Plaintiff contends that she was placed in a position that required extensive

use of her arms despite her "known disability" in her arms. Even if her limitation rose to the level of a disability, plaintiff's medical restriction was written narrowly. She was restricted from "repetitive pinching and gripping of lead plates," not a broad restriction on the use of her arms. Defendant followed the restriction and placed her in a position that did not violate that restriction.

Second, plaintiff contends that defendant discriminated against her by keeping her in the battery inspector position despite her complaints of pain in her arms. However, plaintiff's deposition testimony indicates that she could handle low numbers of rejections and would only complain of pain when the rejection rates were high. In addition, plaintiff fails to show that she was ever prevented from leaving this position. When she complained in August 1992 that her arms hurt, she was allowed a leave of absence. Although plaintiff may not have been pleased when the requested push-off device was not installed, she has not shown defendant's legitimate business reasons for that decision to be mere pretext for discriminatory motives.

Third, plaintiff alleges that defendant discriminated against her when she was not given the Inspector/Receiving position. Defendant offered facially nondiscriminatory reasons for not offering the position to plaintiff. According to the labor agreement, plaintiff was simply not eligible because she was on leave of absence at the time. Defendant additionally demonstrated that it made a request to the UAW seeking a waiver of this condition to allow defendant to place the plaintiff in this position. Plaintiff has failed to refute defendant's stated reasons by providing facts to support her allegations of discriminatory intent.

Fourth, plaintiff alleges that by placing her in the laborer/janitor position, defendant discriminated against her by placing her in a job that required pushing and pulling, two things that defendant knew she was not able to do. Defendant evaluated the position as within her capabilities and offered reassignment of any function that she felt unable to perform. However, plaintiff presents evidence that the accommodation offered was not genuine. When her supervisor merely ignored her complaint, and did not reassign duties as promised, it became apparent that defendant was not offering an accommodation. However, defendant had been cautious in its dealings with plaintiff when she returned from her leave of absence. Plaintiff was obviously displeased that she had not been offered the inspector/receiving position one month earlier. Defendant evaluated the position and offered plaintiff an accommodation to allow plaintiff to take the position. Given defendant's cautious treatment of plaintiff and her very brief tenure in the position, plaintiff's evidence is insufficient for a reasonable factfinder to find defendant discriminated on the basis of plaintiff's disability.

Plaintiff's next two allegations involve her exclusion from consideration for overtime hours while working in the manufacturing area of the plant. A reasonable factfinder could find that when plaintiff was working on the wafer machine and spin line, she was precluded from receiving overtime opportunities due reasons by providing facts to support her allegations of discriminatory intent.

Fourth, plaintiff alleges that by placing her in the laborer/janitor position, defendant discriminated against her by placing her in a job that required pushing and pulling, two things that defendant knew she was not able to do. Defendant evaluated the position as within her capabilities and offered reassignment of any function that she felt unable to perform. However, plaintiff presents evidence that the accommodation offered was not genuine. When her supervisor merely ignored her complaint, and did not reassign duties as promised, it became apparent that defendant was not offering an accommodation. However, defendant had been cautious in its dealings with plaintiff when she returned from her leave of absence. Plaintiff was obviously displeased that she had not been offered the inspector/receiving position one month earlier. Defendant evaluated the position and offered plaintiff an accommodation to allow plaintiff to take the position. Given defendant's cautious treatment of plaintiff and her very brief tenure in the position, plaintiff's evidence is insufficient for a reasonable factfinder to find defendant discriminated on the basis of plaintiff's disability.

Plaintiff's next two allegations involve her exclusion from consideration for overtime hours while working in the manufacturing area of the plant. A reasonable factfinder could find that when plaintiff was working on the wafer machine and spin line, she was precluded from receiving overtime opportunities due to her medical restrictions. However, defendant's denial of overtime was based upon its evaluation of job positions that plaintiff could and could not perform. While plaintiff now questions defendant's determinations about her ability to perform the necessary functions of those positions, she makes no showing that she could actually have performed these jobs or that she was precluded from overtime in any position that she could perform.

Finally, during plaintiff's first year in the UAW benefits position, she was not offered overtime opportunities as would be expected under the balancing of hours policy. When she brought this to defendant's attention, overtime hours were balanced from that point forward. Plaintiff offers no substantial evidence that this oversight was due to discrimination on the part of defendant. Both parties appear to agree that since the previous positionholder had not sought overtime, defendant did not think to offer, and plaintiff did not think to ask for, balancing of overtime.

Viewing all evidence in the light most favorable to the plaintiff, there is insufficient evidence for a reasonable factfinder to conclude that defendant intentionally discriminated against her on the basis of a disability.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment (Doc. # 60) granted.