**Jane T. POPKO, Plaintiff,**

**v.**

**PENNSYLVANIA STATE UNIVERSITY, The Milton S. Hershey Medical Center, James Adams, Tasna Kitch, and Suzanne Schick, Defendant.**

**No. Civ.A. 1:CV:97–0065**

United States District Court, M.D. Pennsylvania.

Feb. 27, 1998.

---

Andrew J. Ostrowski, Serratelli, Schiffman, Brown & Calhoun, Harrisburg, PA, for Jane T. Popko, plaintiff.

James M. Horne, McQuaide, Blasko, Schwartz, Fleming & Faulkner, Inc., State College, PA, for Defendants.

## *MEMORANDUM*

CAPUTO, District Judge.

## I. INTRODUCTION

Plaintiff, Jane T. Popko, brings this unlawful discrimination and retaliation action under the American with Disabilities Act (ADA), 43 U.S.C. §§ 12101–12213 (Law. Coop.Supp.1997) and the Pennsylvania Human Relations Act (PHRA), 43 Pa.Stat.Ann. §§ 951–963 (1991 & Supp.1997). On November 22, 1996, the Equal Employment Opportunity Commission ("EEOC") issued a right to sue letter to plaintiff who then filed a complaint in the Middle District of Pennsylvania on January 14, 1997. Defendants Pennsylvania State University, the Milton S. Hershey Medical Center, James Adams, Tasna Kitch, and Suzanne Schick have moved for summary judgment pursuant to Federal Rules of Civil Procedure 56.[1] For the following reasons, the court will grant the defendants' motion.

## II. BACKGROUND

Taken in a light most favorable to the non-moving party, the facts are as follows. In February of 1973, plaintiff was hired by the defendant as a Medical Technologist in the Clinical Laboratories, and she has been employed there ever since. Plaintiff has two conditions which she claims are disabilities within the meaning of the Act. In her affidavit submitted in opposition to defendants' summary judgment motion, plaintiff states:

---

**1.** Plaintiff also moved to strike appendices to defendants' statement of material fact offered in support of their motion for summary judgment. As provided in Local Rule 7.5, because plaintiff failed to submit a brief within ten days of her motion, the court deems such motion to be withdrawn.

[t]he permanent limitations on my life activities due to my medical conditions/disabilities are:

a) Right brachial plexopathy—cannot swim or play sports involving dexterity of [both] arms; unable to do anything special with hair other than comb and blow dry; ... unable to use keyboard (piano or computer) with right arm; unable to do any overhead lifting that requires the use of both arms; develop pain in neck and shoulders with any repetitive activity due to over compensation of [her] left arm.

b) Idiopathic epilepsy (sleep-related seizure disorder)—need regular sleep cycle of 7–8 hours that I must compensate for every time if not sufficient; defer driving automobile if I have any symptoms of seizure activity, and have frequently been driven to work by my husband after working evening shifts; I have permanently restricted my evening activities to the extent that I am home and asleep by a regular time in order to meet my requirements; I would not be capable of child rearing responsibilities if I was still scheduled for rotating shifts and late evening events and, my husband currently assumes the exclusive responsibility for those matters involving our children, and any other issues of any nature that may occur during my period of rest.

(Pl.'s App. 6.) Although limited, plaintiff can bike, garden, sail and drive. (Def.'s App. 32 at 4–19, 42–44). In addition, plaintiff's disorder does not limit her from working a standard day time shift.

On March 2, 1993, plaintiff had a grand mal seizure because of her failure to maintain an adequate sleep-wake cycle of seven to eight hours per day. At that time, plaintiff did not seek an accommodation from the defendant. In or around the same time, plaintiff informed her then lab manager, Lyman Smith, of her disorder.[2] In March of 1994, the defendant modified plaintiff's duties to include blood-collection one morning per week. On March 31, 1994, plaintiff asked for and received a medical exemption from the blood-collection work due to her injured arm. Also plaintiff stated she informed her supervisors in March of 1994 that she had a sleep-related disorder. In February of 1995, a survey was circulated proposing that all those technologists who were exempt from blood-collecting duties take on additional evening shifts. Plaintiff complained about the proposal to Human Resources. The proposal was never implemented.

On March 1, 1995, plaintiff's physician recommended that she maintain consistent day time shifts because of her medical condition. On March 21, 1995, Defendant James Adams asked if her condition would hamper plaintiff's duties as a senior technologist. Plaintiff claims that this inquiry intimidated her. Defendants required plaintiff's physician to give several clarifications of her medical condition. The physician stated that plaintiff's injured arm and her sleep related disorder made it "medically necessary" for her to maintain consistent day time shifts. On April 5, 1995, defendants exempted plaintiff from working evening shifts.

Plaintiff receives an evaluation every year. The evaluation rates employees performance by four "mechanisms": 1) does not meet standards, 2) approaching standards, 3) meets standards, and 4) exceeds standards. (See e.g., Def.App. 29). In 1995, plaintiff received an overall performance evaluation of "does not meet standards." This resulted in her receiving only a 1.0% raise instead of a 1.9% raise. In 1996, she received an evaluation of "approaching standards." Prior to 1995, plaintiff had received either a "meets standards" evaluation or an "exceeds standards" evaluation. Because of her conditions, plaintiff alleges that the 1995 and 1996 evaluations were based on discrimination resulting in lost opportunities to make advances in education, skill, and experience, and severe emotional damage.

## III. DISCUSSION

### 1. Summary Judgment Standard of Review

Federal Rule of Civil Procedure 56(c) provides that the moving party is entitled to

---

**2.** In 1993, defendant James Adams replaced Lyman Smith as manager. Mr. Adams stated that during his first year as manager, he discovered that plaintiff had a seizure in 1973. (Pl.'s App. at 94).

summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Facts that could alter the outcome are material facts." *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 197 (3d Cir.), *cert. denied*, 513 U.S. 1022, 115 S.Ct. 590, 130 L.Ed.2d 503 (1994). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Initially, the moving party must show the absence of a genuine issue concerning any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 329, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir.1988); *Continental Ins. Co. v. Bodie*, 682 F.2d 436 (3d Cir.1982). Once the moving party has satisfied its burden, the nonmoving party "must present affirmative evidence to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 256–57. Mere conclusory allegations or denials taken from the pleadings are insufficient to withstand a motion for summary judgment once the moving party has presented evidentiary materials. *Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir.1990). Rule 56 requires the entry of summary judgment, after adequate time for discovery, where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden

of proof at trial." *Celotex*, 477 U.S. at 322. "The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 323.

**2. The Americans with Disabilities Act [3]**

**A. Individual Liability**

[1] Defendants Adams, Kitch, and Schick are entitled to a judgment as a matter of law because plaintiff fails to establish individual liability under the ADA. The ADA provides that an employer "shall [not] discriminate against a qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a). The ADA defines employer as: "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calender weeks in the current or preceding calender year, and any agent of such person." *Id.* § 12111(5). In a Title VII action, the Third Circuit has held that liability does not extend to individual employees. *Dici v. Pennsylvania*, 91 F.3d 542, 552 (3d Cir.1996). Courts have also logically refused to extend liability to individuals in ADA actions. *See e.g., U.S. E.E.O.C. v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1281 (7th Cir.1995) (holding owner could not be liable under the ADA), *Sheridan v. E.I. duPont de Nemours & Co.*, 74 F.3d 1439 (3d Cir.1996) (unreported decision), *vacated on other grounds*, 74 F.3d 1439 (holding that liability is limited to an employer under the ADA based upon interpretations of Title VII and ADEA). Defendants Adams, Kitch, and Schick are not employers under the ADA. Their motions for summary judgment will therefore be granted.

**B. Prima Facie Claim**

■ In order for plaintiff to prevail in this case where plaintiff claims she was discriminated against because of a disability, plaintiff

**3.** The definitions set forth in the PHRA are exactly the same as those in the ADA. This court will, therefore, not discuss plaintiff's PHRA claims because the discussion of the ADA claim will also

dispose of the PHRA claims. *See e.g., Matczak v. Frankford Candy & Chocolate Co.*, 950 F.Supp. 693 (E.D.Pa.1997); *Doe v. Kohn Nast & Graf, P.C.*, 862 F.Supp. 1310, 1323 (E.D.Pa.1994).

must suffer from a disability within the meaning of the ADA. If she does not have a disability, summary judgment should be granted in favor of the defendants. I find that plaintiff does not meet her initial burden of establishing a prima facie claim of unlawful discrimination or retaliation because she fails to establish she has a disability under the ADA. *See Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir.1996) (affirming summary judgment where plaintiff "failed to establish a prima facie case of disability because he was not disabled for the purposes of the ADA"). To survive a summary judgment motion in a discriminatory employment action, a plaintiff must establish a prima facie case by proving that "(1) [s]he belongs to a protected class; (2) [s]he was qualified for the position; (3) [s]he was dismissed despite being qualified; and (4) [s]he was ultimately replaced by a person sufficiently outside the protected class to create an inference of discrimination." *Howell v. Sam's Club, # 8160/ Wal–Mart*, 959 F.Supp. 260, 263 (E.D.Pa. 1997) (quoting *Lawrence v. National Westminster Bank N.J.*, 98 F.3d 61, 68 (3d Cir. 1996) (citation omitted in original)). "If a plaintiff establishes a prima facie case of unlawful discrimination, the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the plaintiff's rejection." *Id.* at 264 (citing *Olson v. General Elec. Astrospace*, 101 F.3d 947, 951 (3d Cir.1996) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973))).

A plaintiff proves that she belongs to a protected class by proving that she is disabled within the meaning of the ADA. *See Id.* "The ADA defines disability alternatively." *Burch v. Coca–Cola Co.*, 119 F.3d 305, 321 (5th Cir.1997). The ADA defines disability as:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). "A plaintiff who sues on an intentional discrimination theory can rely on any of these three alternatives."

*Burch*, 119 F.3d at 311. A court must, therefore, first determine if an individual is disabled for the purposes of the ADA before it can decide if that individual was discriminated against. *See Kelly*, 94 F.3d at 105.

(i) Substantially Limit A Major Life Activity

There can be little doubt that plaintiff's conditions are impairments, however, neither plaintiff's right injured arm or her sleep disorder substantially limit one or more major life activities. The Code of Federal Regulations defines "major life activities" as functions such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working ." 29 C.F.R. § 1630.2(i) (1997). The Code defines "substantially limits" as:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

*Id.* § 1630.2(j)(1). Whether an impairment "substantially limits" a major life activity is determined by "(i) [t]he nature and severity of the impairment; (ii) [t]he duration or expected duration of the impairment; and (iii) [t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." *Id.* § 1630.2(j)(2).

Plaintiff did not produce any evidence that the restricted use of her right arm and her sleep-related disorder are so great, when compared to the average person, to be a significant restriction on her ability to care for herself, perform manual tasks, walk, see, hear, breathe, learn, or work. On a motion for summary judgment, courts have required that plaintiffs show more than a restriction on a major life activity; they must show a "significant restriction." *See e.g., Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 727 (5th Cir.1995) (affirming summary judgment,

holding "the inability to perform one aspect of a job while retaining the ability to perform the work in general does not amount ·to substantial limitation of the activity of working"); *Matczak,* 950 F.Supp. at 696 (granting summary judgment, holding epileptic's "inability to climb heights or work around machinery, even though most people may be able to do so, cannot be said to be a substantial limitation"); *Howell,* 959 F.Supp. at 265– 66 (granting summary judgment, holding that a twenty pound lifting restriction was not enough to substantially limit the ability to work).

In *Horth v. General Dynamics,* 960 F.Supp. 873, 878 (M.D.Pa.1997), the plaintiff was unable to sit or stand for more than two hours at a time without having difficulty, walked with a limp, and could not lift things over twenty pounds. *Id.* The court held that plaintiff's evidence constituted no more than " 'comparatively moderate restrictions.' " *Id.* (quoting· *Kelly,* 94 F.3d at 108 (holding that a plaintiff's limp while he walked may restrict his walking but the plaintiff was not "substantially limited")). The court granted summary judgment reasoning that the plaintiff "ha[d] failed to provide any evidence to support his claim that his impairments are so great, when compared to the average person, as to significantly limit one of his major life activities." *Id.*

■ In the instant case, plaintiff's right arm condition restricts her from playing the piano, swimming, or playing sports involving dexterity of the arms. There is no basis to conclude, and plaintiff has provided no authority for the proposition, that these leisure activities are major life activities. The authority is to the contrary. *See Whitfield v. Pathmark Stores, Inc.,* 971 F.Supp. 851, 853– 58 (D.Del.1997) (granting summary judgment, holding injuries restricting lifting, "repeated reaching, bending, stooping, driving, ridding in a car, or playing sports," "fall on the common place, as opposed to the severe"); *Ouzts v. USAir, Inc.,* 1996 WL 578514 at *4 (W.D.Pa. July 26, 1996) (granting summary judgment, holding plaintiff's problem reading, sitting in a theater, and restrictions on driving with one arm did not substantially limit a major life activity);

*Kirkendall v. United Parcel Serv., Inc.,* 964 F.Supp. 106, 110 (W.D.N.Y.1997) (granting summary judgment, holding restrictions on "skiing, football, tennis, basketball, bowling" do not substantially limit a major life activity). Moreover, plaintiff fails to establish that her restriction on these leisure activities are so great as compared to the manner or way the average person ·in the general population performs those same activities.

■ In addition, these restrictions do not impair her ability to learn. Plaintiff has recently received her MBA. She has taught herself to rely on her left arm. *See e.g., Dutcher,* 53 F.3d at 726 (affirming the granting of summary judgment because a jury could not find an individual who learned how to take care of herself with her injured arm was substantially limited in a major life activity). She has learned how to drive, sail, and garden with the limited use of her right arm. As compared to the average person in the general population, she is not significantly restricted· in her ability to learn.

Plaintiff's inability to do anything with her hair but comb and blow dry it does not substantially limit her ability to care for herself. As compared to the average person in the general population, this circumstance is not a significant restriction. Also, plaintiff's restrictions on using a computer, overhead lifting, and only being able to work day shifts are only "comparatively moderate restrictions" on her ability to work. *See Horth,* 960 F.Supp. at 878. In addition, plaintiff admits that her sleep-related disorder does not prevent her from doing the essential functions of her job. (Pl's Resp. to Def's Stat. Mat. Facts ¶ 50.) Although these restrictions may foreclose her from doing some duties at work, they do not foreclose the whole spectrum of her duties with the defendant. *See Zimmerman v. General Motors,* 959 F.Supp. 1393 (D.Kan.1997) (quoting 29 C.F.R. § 1630.2(j)(3) providing to substantially limit work, the impairment must "significantly restrict ... the ability to perform a class of jobs or a broad range of jobs in various classes"). The restriction of being able to only work day time shifts is not so great as compared to the average person to rise to

the level of a significant restriction on a major life activity.

Moreover, plaintiff's restricted seven to eight hour sleep cycle does not significantly restrict her ability to sleep. Plaintiff provides no evidence that the general population requires less than seven or eight hours of sleep per day. Plaintiff's shakiness or her inability to drive in the morning if she does not maintain a seven to eight hours of sleep does not substantially limit a major life activity. *See Ouzts,* 1996 WL 578514 at *4 (holding plaintiff's restrictions on driving a car and riding in a car did not a substantially limit a major life activity). Furthermore, plaintiff's limited ability to tend to her children at night, does not substantially limit her ability to raise her children. *See Kirkendall,* 964 F.Supp. at 110 (holding plaintiff's restrictions on lifting a child from the floor and playing with the child not a substantial limit on a major life activity).

On the basis of the facts viewed in the light most favorable to the plaintiff and the applicable statutory and case law, there is no genuine issue of material fact as to whether the plaintiff has an impairment that substantially limited a major life activity within the meaning of the ADA. I conclude that no such issue exists. She did not have an impairment that substantially limited a major life activity.

### (ii) Record of Impairment

The Code defines a record of such impairment as "a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k). The defendant is entitled to a judgment as a matter of law if plaintiff's "record of impairment does not demonstrate a substantial limitation in major life activities." *Howell,* 959 F.Supp. at 268 (citing *Mobley v. Board of Regents,* 924 F.Supp. 1179, 1188 (S.D.Ga. 1996); *Dotson v. Electro–Wire Products,* 890 F.Supp. 982, 990–91 (D.Kan.1995); *Flasza v. TNT Holland Motor Express, Inc.,* 159 F.R.D. 672, 677–78 (N.D.Ill.1994)). The physician declaration that Plaintiff's injured arm and sleep related disorder made it "medically necessary" for her to work day time shifts

does not demonstrate a substantial limitation on a major life activity. *See Williams v. City of Charlotte, N.C.,* 899 F.Supp. 1484, 1487 (W.D.N.C.1995) (holding "a physical condition does not automatically qualify as a 'disability' simply because it is documented by a medical study, diagnosed by a doctor, or capable of being medically treated"). There is no genuine issue of material fact on this alternative in the ADA, and I conclude that plaintiff does not have a record of such impairment within the meaning of the ADA.

### (iii) Regarded as Having an Impairment

■ Plaintiff fails to establish that there is a genuine issue of material fact as to whether the defendants regarded her as having an impairment. In *Kelly,* the Third Circuit held that "the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that the perception caused the adverse employment action." *Kelly,* 94 F.3d at 109. Plaintiff "must demonstrate that her employer 'perceived that not only did she suffer from a [physical] impairment, but that such [perceived] impairment substantially limited her ability to work.'" *Sarko v. Penn–Del Directory Co.,* 968 F.Supp. 1026, 1035 (E.D.Pa.1997) (second alteration in original) (quoting *Johnson v. Boardman Petroleum, Inc.,* 923 F.Supp. 1563, 1568 (S.D.Ga.1996)). Plaintiff has not pointed to any evidence that defendants perceived that her medical conditions substantially limited her ability to work. *See Howell,* 959 F.Supp. at 269.

The fact that the defendants allowed plaintiff to only work day shifts does not demonstrate that defendant perceived plaintiff as having a disability under the ADA. *See Horth,* 960 F.Supp. at 881 n. 9 (holding the evidence of a defendant accommodating an employee to light duty status was not enough to show the defendant regarded the employee as disabled). In addition, plaintiff was not foreclosed from doing her job because of her impairments. *See Howell,* 959 F.Supp. at 269 (holding plaintiff must show the employer regarded him as "being substantially limited in performing either a class of jobs or a broad range of jobs in various classes")

**300**

(quoting *MacDonald v. Delta Air Lines, Inc.*, 94 F.3d 1437, 1445 (10th Cir.1996)). Defendants' accommodations to plaintiff do not provide evidence that the defendants regarded her as disabled under the ADA.

Defendant Adams's inquiry of whether plaintiff could complete all of her duties does not establish that he believed she was disabled under the ADA. Defendants correctly point out that the Code provides for "an informal, interactive process" in determining whether an individual needs an accommodation. 29 C.F.R. § 1630.2(*o*)(3). Plaintiff does not point to any evidence that this inquiry, as provided by the Code, demonstrates that defendants perceived that she was disabled under the ADA. *See Beck v. University of Wis. Bd. of Regents,* 75 F.3d 1130, 1137 (7th Cir.1996) (affirming summary judgment, holding employer properly communicated with employee about an accommodation, and therefore, could not be liable under the ADA); *see also Chandler v. City of Dallas,* 2 F.3d 1385, 1393 (5th Cir.1993), *cert. denied,* 511 U.S. 1011, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994) (holding "[a]n employer's belief that an employee is unable to perform one task with an adequate safety margin does not establish per se that the employer regards the employee as having a substantial limitation on his ability to work in general").

Again I find there is no genuine issue of material fact on this alternative in the ADA. Plaintiff cannot establish that there is a genuine issue of material fact as to whether defendants regarded plaintiff as disabled within the meaning of the ADA.

## IV. CONCLUSION

The court is not insensitive to Mrs. Popko's conditions. It is quite clear that she suffers from physical and medical impairments. And while these impairments no doubt take there toll on the plaintiff in her daily living, I cannot find that they are disabilities under the ADA. Because I have found that plaintiff's impairments do not constitute disabilities within the meaning of the ADA, it is unnecessary to consider the remaining elements of an action for discrimination in employment.

Therefore, summary judgment will be granted to defendants because plaintiff does not suffer from a disability within the meaning of the ADA. *See* 42 U.S.C. § 1202(2).