**Elaine J. GOLDRING, Plaintiff,**

v.

**SILLERY MAYER & PARTNERS, and Russell Sillery (President and CEO), Defendants.**

**No. 3:98 CV 00301(PCD).**

United States District Court, D. Connecticut.

March 29, 1999.

transferred as supplemental motions to each named defendant's pending § 2255 petition.

---

Footnote:

Scott R. Lucas, Mary Alice S. Canaday, MacMillan & Lucas, Westport, U.S. Court of Appeals, Office of the Clerk, New York City, for Plaintiffs.

Daniel Schwartz, Terri L. Stein, Sarah Moore Fass, Day, Berry & Howard, Stamford, CT, for Defendants.

## RULING ON DEFENDANTS' MOTION TO DISMISS

DORSEY, District Judge.

Plaintiff alleges that she was discriminated against in violation of the Americans with Disabilities Act (ADA) and Connecticut statutory and common law. Defendants move to dismiss the complaint for (1) failure to state a claim under the ADA and (2) lack of jurisdiction for the state claims once the federal claim is dismissed.

## I. *BACKGROUND*

For the purposes of this motion, the factual allegations in the Complaint are taken as true. Plaintiff was employed by the defendant, Sillery Mayer & Partners ("SMP"), from April 17, 1993 until January 15, 1998. SMP was located in Stamford, Connecticut. Before and throughout her employment with SMP, plaintiff claims she suffered from a phobia which caused panic attacks when she drove over bridges, on highways or in heavy traffic. Plaintiff alleges that SMP hired her with knowledge of her resulting difficulties from commuting.

Plaintiff states that her employment always resulted in positive feedback and performance reviews. She was hired at a salary of $45,000 and was earning $61,500 by the summer of 1996. She also claims that until November 1996, she was not required to commute as a part of her job.

On August 23, 1996, SMP issued a new company plan and assigned plaintiff to the company's A & P account. A division of this account was located in Montvale, New Jersey. In November, defendant Russell Sillery ("Sillery") told plaintiff that she would be required to commute to Montvale to service the A & P account, eventually at a frequency of two to three times a week. Plaintiff voiced her objections. Plaintiff told Sillery that the driving made her uncomfortable and sometimes brought on anxiety attacks, particularly in inclement weather. She claims that Sillery insisted that the trips were mandatory and so she acquiesced, despite the detrimental effects she was experiencing.

Plaintiff alleges she worked in Montvale on a daily basis for periods in December 1995. Plaintiff again expressed to Sillery that she was having psychological problems, physical symptoms and anxiety in connection with the travel, but SMP was unwilling to do anything about the situation.

On January 2, 1996, Sillery told plaintiff that she would be needed in Montvale the next day. Plaintiff requested limited future traveling because of her symptoms. Sillery then allegedly issued a "Termination of Employment" which gave plaintiff two weeks to "find a solution" to her "travel problem that she described as a phobia." Complaint at ¶ 23.

During her two weeks, plaintiff consulted with a mental health practitioner who diagnosed her as suffering from Specific Phobia 300 .29 from the Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders* ("DMS–IV"). Defendants were informed of the diagnosis. Plaintiff claims that when she returned to work, defendant told her that unless she was prepared to travel immediately without limitation, her job no longer existed. Plaintiff claims that defendant offered her a significantly lower-paying position as a computer operator, or nominal severance pay conditioned upon a release of all claims against the defendants.

She subsequently received a letter from Sillery which stated that he was unsure whether plaintiff would be able to perform the essential travel functions of her position. He restated the offer of the computer operator position or severance conditioned upon a release of claims, which allegedly was not provided.

Plaintiff proceeded to file claims with the state Commission on Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunity Commission ("EEOC").

## II. *DISCUSSION*

### A. *12 (b)(6) STANDARD*

Ruling on a 12(b)(6) motion to dismiss, the complaint's factual allegations are presumed to be true, and all factual inferences are to be drawn in the plaintiff's favor. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir. 1989).

The moving party bears a substantial burden to sustain a motion to dismiss. A court may not dismiss a complaint unless the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *H.J. Inc. v. Northwestern Bell Tel.Co.,* 492 U.S. 229, 249–250, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). "A complaint should not be dismissed simply because a plaintiff is unlikely to succeed on the merits." *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683.

### B. *AMERICANS WITH DISABILITIES ACT (ADA)*

The ADA prohibits employers from discriminating against an individual with a disability who with or without reasonable accommodation can perform the essential functions of the job. *See* 42 U.S.C. sec. 12112(a).

### 1. *A "Disability" Within The Meaning of the ADA*

The ADA defines "disability" as (a) a physical or mental impairment that substantially limits one or more of the major life activities of the individual; (b) a record of such impairment; or being regarded as having such an impairment. 42 U.S.C. sec. 12102(2). Plaintiff alleges that she suffered from a physical and/or neurological impairment that substantially limited one or more of her major life activities which was regarded by the defendants as true.

#### a. Mental Impairment

Plaintiff alleges that she suffered from a phobia which impeded her ability to drive over bridges, on highways or in heavy traffic. She alleges that driving to Montvale, New Jersey from Connecticut sometimes brought on anxiety attacks. She alleges that her specific phobia is recognized and recorded by the American Psychiatric Association.

Plaintiff also alleges that the defendants regarded her as disabled. She claims that before the defendants hired her, she informed them of her phobia and that during the course of her employment, she discussed her driving difficulties with them on several occasions.

Therefore, the question is not whether the plaintiff has alleged that she suffered from an impairment or was regarded as suffering from an impairment. The question is whether or not the plaintiff has alleged that she suffered from an impairment covered by the ADA because it substantially limits a major life activity. *See Reeves v. Johnson Controls,* 140 F.3d 144 (2d Cir.1998) ("We see no reason to question, that panic disorder... constitutes a 'mental impairment' for purposes of the ADA.")

#### b. Major Life Activities

Defendants move to dismiss the Complaint on the grounds that *driving* is not a major life activity. But, plaintiff contends

that her *working* and *breathing* abilities (not her *driving* abilities) were limited by her impairment. See Pls. Mem. in Opp'n to Mot. to Dismiss at 9.

The EEOC regulations define "major life activities" as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. sec. 1630.2(I). As the words "such as" suggest, the list of major life activities is meant to illustrate and not exclude. *See Ryan v. Grae & Rybicki P.C.*, 135 F.3d 867, 869 (2d Cir.1998).

■ Drawing factual inferences from the specific allegations in the Complaint, plaintiff has alleged that her specific phobia limited her major life activities of working and breathing. Plaintiff alleges that because she was unable to "drive over bridges, drive on highways or in heavy traffic," Complaint at ¶ 8, she was unable to "travel immediately, without limitation," Complaint at ¶ 26, and was, therefore, fired from her job. She also claims that as a result of her driving difficulties, she suffered anxiety attacks and was diagnosed as suffering from Specific Phobia 300.29 from the DMS–IV, which describes symptoms of the phobia including:

> "palpitations, sweating, trembling or shaking, sensations of shortness of breath or smoldering, feeling of choking, chest pain or discomfort, nausea or abdominal distress, dizziness or lightheadedness, derealization or depersonalization, fear of losing control or 'going crazy,' fear of dying paresthia, and chills or hot flashes." [1]

It is reasonable to infer from the allegations of plaintiff's limitations on her ability to work and breathe, as well as her ability to drive, resulted from the symptoms of her alleged phobia.

#### c. Substantial Limitation

Defendants claims that even if driving were a major life activity, plaintiff was not substantially limited in her ability to drive. The argument is inapplicable because defendants have presumed the wrong life activity. Construing the complaint as alleging that plaintiff's ability to *breathe* and *work* were limited by her phobia, the question is whether her working and breathing were substantially limited within the meaning of the ADA.

■ An impairment substantially limits a major life activity if the individual is unable to perform a major life activity that the average person in the general population can perform, or is significantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. sec. 1630.2(j)(1)(1998). The determination whether an impairment "substantially limits" a major life activity is fact-specific and contemplates an individual, case-by-case analysis. *See Ryan*, 135 F.3d 867, 871; *Ennis v. National Ass'n of Business and Educational Radio, Inc.*, 53 F.3d 55, 59 (4th Cir.1995).

■ A person is substantially limited in the major life activity of working if the person is significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person with comparable training, skills and abilities. *See* 29 C.F.R. sec. 1630.2(j)(3). A fact-finder may consider the geographical area to which the individual has reasonable access and the number and types of jobs within that geographical area from which the individual is disqualified because of the im-

---

1. Though a court considering a motion to dismiss for failure to state a claim is limited to the factual allegations in the complaint, the complaint includes any written instrument attached to it as an exhibit and any statements or documents incorporated into it be reference. *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 674 (2d Cir.1995) (internal citations omitted).

pairment. *See id.; Williams v. Kerr–McGee Corp.*, 1997 WL 158176 at *6 (10th Cir.1997); *Popko v. Penn. State University*, 994 F.Supp. 293, 300 (E.D.Pa.1998) ("A plaintiff must present demographic evidence to show what jobs or a broad range of jobs in his geographic area he has been excluded from due to his disability.")

Whether or not the plaintiff was substantially limited in her ability to *work* as a result of her alleged phobia depends upon evidence of how her phobia affected the manner, condition, or duration under which plaintiff was able, or unable, to drive as compared to the average member of the population. The determination will depend on the number of jobs in the region from which plaintiff was disqualified because of her alleged driving limitations in comparison to the jobs available to the average person of similar training, skills and abilities.

Defendants argue that several federal cases have held that a limited ability to drive does not constitute a disability. *See Lally v. Commonwealth Edison Co.*, No. 95 C 4220, 1996 U.S. Dist. LEXIS 19386 (N.D.Ill.Dec. 19, 1996); *see also Flight v. Gloeckler*, 68 F.3d 61 (2d Cir.1995); *Outzts v. U.S.Air, Inc.*, No. 94–625, 1996 U.S. Dist. LEXIS 11610 (W.D.Pa. July 26, 1996). The plaintiff in *Lally* also suffered from a driving-related phobia and a separate anxiety disorder. On a motion for summary judgment, the court granted defendant's motion in relation to the driving phobia holding that plaintiff's inability to drive long distances did not substantially limit her in any major life activity other than driving itself. *Lally*, 1996 U.S. Dist. LEXIS 11610 at *49. The court specifically noted that plaintiff did not contend that her driving phobia substantially limited her ability to work. *Id.* at *43, n. 19. As to her anxiety and panic attacks, the court found that when plaintiff experienced an anxiety attack "precipitated by her job, she could not eat, sleep, breathe, or concentrate . . . Because a reasonable jury could find that Lally's stress disorder af-

fected several major life activities, Defendant is not entitled to summary judgment on this basis." *Id.* at *43. The other cases cited are similarly inapposite here.

In *Reeves v. Johnson Controls World Services*, 140 F.3d 144 (2d Cir. 1998), plaintiff claimed, under the ADA, a disability based on a mental disorder that inhibited his driving and significantly impaired the major life activity of "everyday mobility." The court held that "everyday mobility" did not constitute a major life activity. Plaintiff did not allege that any other major life activity such as breathing or working were affected by his disorder, of which the court took specific note. *Id.* at 149, 151. The court stated that a "plaintiff claiming that her asthma substantially limits her ability to engage in the major life activity of breathing is not first asked to prove that breathing is a major life activity for her." *Id.* at 151–52 (citing *Heilweil v. Mount Sinai Hospital*, 32 F.3d 718, 723 (2d Cir.1994).

Additionally, the DSM–IV states that a person is diagnosed with Specific Phobia 300.29 only if the avoidance, fear, or anxious anticipation of encountering a phobic stimulus "interferes significantly with the person's daily routine, occupational functioning, or social life, or if the person is markedly distressed about having the phobia." Plaintiff's Memorandum in Opposition, Ex. A, DSM–IV at 405. It can not be said as a matter of fact or law that the inability to drive over bridges, on highways or in traffic does not present a substantial limitation on plaintiff's ability to work. *See also Reynolds v. Brock*, 815 F.2d 571, 574 (9th Cir.1987) ("Unable to drive to work, many epileptics have severely limited job opportunities.")

Likewise, whether or not plaintiff was substantially limited in her ability to *breathe* can not be determined at this stage of litigation. The determination will depend on *how* the anxiety attacks alleged in the Complaint specifically restricted *her* breathing abilities in comparison to the

breathing abilities of members of the general public.

d. Otherwise Qualified To Perform the Essential Functions of the Job

Defendants contend that the complaint should be dismissed because it fails to allege that plaintiff can perform the essential functions of her job as required by the ADA. They argue that it was admitted in the complaint that plaintiff was unable or unwilling to do the required driving.

(1) The Essential Functions of the Job

██ Essential functions are defined as the 'the fundamental job duties of the employment position." 29 C.F.R. sec. 1630.2(n). They do not include marginal functions. *See id.* Evidence of whether a particular function is "essential" includes, but is not limited to:

(I) The employer's judgment as to which functions are essential;

(ii) Written job descriptions prepared before advertising or interviewing applicants for the job;

(iii) The amount of time spent on the job performing the function;

(iv) The consequences of not requiring the incumbent to perform the function;

(v) The terms of the collective bargaining agreement;

(vi) The work experience of past incumbents in the job; and/or

(vii) The current work experiences of incumbents in similar jobs.

29 C.F.R. sec. 1630.2(n)(3); *Popko,* 994 F.Supp. at 300. Inquiry into a position's essential functions is not intended to second guess the employer or to require the employer to lower its company standards. *See id.; Durning v. Duffens Optical, Inc.,* 1996 WL 67640, *5 (E.D.La.1996). Determining the essential functions of a job is a fact-specific inquiry into the employer's description of the job and how the job is actually performed. *Hernandez v. City of Hartford,* 959 F.Supp. 125, 131 (D.Conn. 1997).

██ Plaintiff alleges that SMP hired her with knowledge of her driving difficulty. She also alleges that travel was not a requirement of her job at SMP nor of art directors in the industry in general. Furthermore, plaintiff alleges that she always received good performance reviews. It can not be said that plaintiff fails to claim that she could perform the essential functions of the position. Plaintiff's inability to perform the required driving without suffering the symptoms of her specific phobia does not necessarily imply that she could not perform the essential functions of her job. Plaintiff claims that travel was not an essential function.

The defendant relies on *Durning,* for the proposition that a plaintiff's case should be dismissed where he alleges that he was unable to perform essential driving functions. *See* 1996 WL 67640. In *Durning,* the plaintiff was an outside salesman. He admitted that he knew that in-person sales calls were part of the job. *See id.* The court granted the defendant's motion for summary judgment when the plaintiff failed to produce evidence that the driving was not an essential function. Plaintiff has not admitted that traveling was an essential function of her job. Nor has she had the opportunity to present evidence on this point. Obviously, a traveling salesman would be expected to drive as a part of his job, while that would not normally be expected of an art director. Despite the discretion afforded employers in defining essential functions, plaintiff's alleged driving limitations do not bar her claim that she was able to perform the essential functions of her position.

(2) Reasonable Accommodation

Lastly, defendants argue that plaintiff's claim fails as a matter of law because she admits that SMP offered her an alternative position which she did not accept.

██ Employers are required to provide reasonable accommodation to a qualified individual with a disability, absent undue.

hardship. *See* 42 U.S.C. sec. 12112(b)(5)(A). The EEOC Regulations provide that reasonable accommodation may include reassignment to a vacant position. 29 C.F.R. sec. 1630.2(*o*)(2)(ii). The reasonableness of an accommodation involves a case-by-case inquiry which considers the effectiveness of the modification in light of the nature of the disability in question and the cost of implementing the modification. *See Staron v. McDonald's Corp.*, 51 F.3d 353, 356 (2d Cir.1995).

■ Plaintiff here does not allege that she was unable to perform the essential functions and, therefore, should have been offered a reasonable accommodation. Thus, defendants' argument about the alternative position as a reasonable accommodation is misplaced. Plaintiff alleges that she could perform the essential functions without any accommodation. She alleges that she did so for almost two years before she was assigned to the A & P account and that the defendants hired her to perform the Art Director position with knowledge of her driving impairment.

If it is found that driving was an essential function that plaintiff could not perform, the court will then have to inquire into whether or not the defendants' offer to reassign the plaintiff to a computer operator position was a reasonable accommodation as defined by the ADA. But, construing the complaint in the light most favorable to the plaintiff, plaintiff claims that she was able to perform the essential functions without reasonable accommodation. Hence, defendants' argument is premature.

## III. CONCLUSION

For the previous reasons, the Motion to Dismiss (doc. 12) is denied.

SO ORDERED.