PUBLISH

UNITED STATES COURT OF APPEALS

Filed 7/1/96

TENTH CIRCUIT

APRIL L. HUDSON,

        Plaintiff-Appellant,

v.

MCI TELECOMMUNICATIONS
CORP.,

        Defendant-Appellees.

No. 95-1253

Appeal from the United States District Court
for the District of Colorado
(D.C. No. 94 N 1904)

Robert C. Ozer of Ozer, Ruppert & Ozer, P.C., Denver, Colorado, for Plaintiff-Appellant.

John R. Webb of Holme Roberts & Owen, Denver, Colorado (Edwin P. Aro of Holme Roberts & Owen, Denver, Colorado, and William L. Kasley of MCI Telecommunications Corp., San Francisco, California, with him on the brief), for Defendant-Appellee.

Before **BALDOCK, BRISCOE,** and **MURPHY,** Circuit Judges.

**MURPHY**, Circuit Judge.

Plaintiff brought this action to recover for her termination by defendant, alleging that defendant's actions violated the Americans with Disabilities Act ("ADA"). The district court granted summary judgment to defendant. The court held that plaintiff had failed to demonstrate that she was qualified to perform the essential functions of her job with a reasonable accommodation by her employer. Because the accommodation plaintiff urges, unpaid leave of indefinite duration, does not constitute a "reasonable accommodation" under the ADA, we affirm.

Plaintiff April Hudson worked for defendant MCI Telecommunications from January 6, 1993, until May 24, 1994. As a customer service representative, Hudson's duties included answering customer phone calls and placing phone calls to current and potential MCI customers. These duties required Hudson to spend approximately six hours per day on the phone and at the computer keyboard. Although her performance and sales statistics were exemplary, Hudson had a history of attendance problems at MCI.

On March 22, 1994, Hudson complained to her supervisor that she was experiencing pain in her hands and arms. She was subsequently diagnosed with

carpal tunnel syndrome. In response to her initial complaint, Hudson's treating physician issued restrictions providing that she was to take fifteen minutes off for each hour of repetitive, digital activity. On April 13, 1994, Hudson's physician issued new restrictions prohibiting all typing and keyboard activity. From April 13, 1994, until the date of her termination, Hudson continued to work, coaching other customer service representatives and performing a variety of office and clerical tasks that did not involve typing or keyboard activity.

On May 24, 1994, after first being suspended for tardiness, Hudson was terminated. In July, two months after her termination by defendant, Hudson underwent nerve decompression surgery. In October, she was released from her physician's care with no specific work restrictions.

In September 1994, Hudson sued MCI, alleging discrimination and harassment in violation of the ADA. MCI moved for summary judgment, arguing that Hudson was neither disabled nor qualified under the ADA. The district court granted MCI's motion, holding that Hudson had failed to demonstrate a genuine issue of fact with respect to whether she was qualified for her position at MCI. In making its decision, the trial court assumed that Hudson was disabled within the meaning of the ADA. Hudson appeals.

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual

in regard to job application procedures, [or] the hiring, advancement, or discharge of employees." 42 U.S.C. § 12112(a). In order to maintain a claim under the ADA, a plaintiff must demonstrate (1) that she is a disabled person within the meaning of the ADA; (2) that she is qualified; and (3) that the employer terminated her because of her disability. *White v. York Int'l Corp.*, 45 F.3d 357, 360-61 (10th Cir. 1995).

Plaintiff argues that the district court erred by granting summary judgment to defendant on the grounds that she failed to create a genuine issue of material fact concerning her status as a qualified individual under the ADA. This court has adopted a two-part analysis for determining whether a disabled individual is qualified under the ADA:

> First, we must determine whether the individual could perform the essential functions of the job, i.e., functions that bear more than a marginal relationship to the job at issue. Second, if (but only if) we conclude that the individual is not able to perform the essential functions of the job, we must determine whether any reasonable accommodation by the employer would enable him to perform those functions.

*White*, 45 F.3d at 361-62 (quoting *Chandler v. City of Dallas*, 2 F.3d 1385, 1393-94 (5th Cir. 1993), *cert. denied*, 114 S. Ct. 1386 (1994)). Examples of possible accommodations include "permitting the use of accrued paid leave or providing additional unpaid leave for necessary treatment." 29 C.F.R. Pt. 1630, Appendix to Part 1630--Interpretive Guidance to Title I of the ADA, § 1630.2(o).

-4-

Conceding that she was unable to perform the essential functions of her job without accommodation, Hudson argues that her impairment was clearly remediable and that defendants failed to reasonably accommodate her by refusing to provide unpaid leave while she sought necessary treatment. To demonstrate that providing unpaid leave was feasible in her case, she notes that, under Colorado's workers' compensation scheme, MCI had the option of temporarily removing her from the payroll. Under these circumstances, she acknowledges, MCI would still have been required to bear the cost of her disability benefits.

The Fourth Circuit has held that the ADA does not require an employer to grant an employee indefinite leave as an accommodation. *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995). Rejecting an employee's claim that his employer failed to accommodate his disabling condition, the court concluded that the term "reasonable accommodation" refers to those accommodations which presently, or in the near future, enable the employee to perform the essential functions of his job. *Id.*

In support of her argument that her impairment was clearly remediable, Hudson points to reports prepared by the physicians MCI selected for her pursuant to Colorado's workers' compensation scheme. On both forms upon which she relies, the treating physician checked "No" in response to the question, "Is permanent impairment anticipated?" The first form was completed on March

-5-

22, 1994. The second form was completed on April 13, 1994. Based on these reports, Hudson argues, defendants knew that her full recovery was anticipated and that temporary leave was accordingly a reasonable accommodation.

These reports, however, also indicate that Hudson's initial work restrictions, one fifteen-minute break from repetitive activity per hour, had been expanded to bar all keyboard work. In addition, the hand specialist to whom Hudson was later referred, Dr. David Conyers, found that her condition had not improved when she met with him on May 4, 1994, despite ongoing physical therapy and her use of a splint. Based on her continuing irritation, Conyers concluded that "it would be unwise to start [Hudson] back on typing and keyboard work." Through the date of Hudson's termination, Conyers's notes do not discuss her prospects for recovery. On the day after she was terminated, an entry in his notes mentions the possibility of surgery for the first time.

On these facts, this court concludes that Hudson has failed to present a genuine issue of material fact for trial. This court agrees with plaintiff that a reasonable allowance of time for medical care and treatment may, in appropriate circumstances, constitute a reasonable accommodation. In this case, however, plaintiff has failed to present any evidence of the expected duration of her impairment as of the date of her termination. The physicians' reports upon which plaintiff relies indicate only that permanent impairment was not anticipated at the

time the reports were prepared. The forms provide no indication, however, of when plaintiff could expect to resume her regular duties at MCI. Moreover, Dr. Conyers's notes through the date of her termination underscore the uncertainty of her prognosis. Under these circumstances, it makes no difference that MCI had the option of removing her from the payroll and paying the costs of her disability benefits. MCI was not required to wait indefinitely for her recovery, whether it maintained her on its payroll or elected to pay the cost of her disability benefits. Accordingly, Hudson has failed to present evidence from which a reasonable jury could find that the accommodation she urges, unpaid leave of indefinite duration, was reasonable.

For the foregoing reasons, the judgment of the district court is AFFIRMED.