**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 27 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

BRIAN LARA,

        Plaintiff - Appellant,

v.

STATE FARM FIRE & CASUALTY
COMPANY,

        Defendant - Appellee.

No. 03-3248
(D.C. No. 02-CV-1308-WEB)
(D. Kansas)

**ORDER AND JUDGMENT**[*]

Before **McCONNELL, McKAY,** Circuit Judges, and **FRIOT,** District Judge.[**]

Plaintiff, Brian Lara, appeals from the district court's grant of summary judgment

for Defendant, State Farm Fire & Casualty Company (State Farm), on his claims under

the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq*. We exercise

jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] The Honorable Stephen P. Friot, United States District Judge for the Western District of Oklahoma, sitting by designation.

I.      Background

Mr. Lara was an employee of State Farm for approximately twelve years. His employment was terminated on February 16, 2002. At the time of his termination, Mr. Lara held the position of Fire Claims Specialist (also referred to in Mr. Lara's brief as Fire Claims Representative) in Wichita, Kansas.

State Farm Fire & Casualty Company handles damage claims covered under homeowners' policies, such as wind, hail, water, fire, theft, vandalism and third party liability.

State Farm's job description for the position held by Mr. Lara states that the individual in this position consistently demonstrates effectiveness in a number of skills and abilities, including the ability to "Inspect Property and Casualty claims which could include obtaining the measurements of the roof and living areas, the inspection of attics, basements, crawl spaces and other claim locations as applicable (requires walking, climbing, bending, reaching, stooping, crawling and lifting objects typically weighing less than 50 lbs.)."

On May 23, 2001, Mr. Lara sustained a back injury in a non-work-related accident, necessitating surgery. Mr. Lara underwent three back surgeries. The final surgery was performed on February 9, 2002. From May of 2001 through February, 2002, Mr. Lara used over 130 full days of paid sick leave.

State Farm had a policy which provided that "[o]nce PSL [Paid Sick Leave] and

/or ML [Medical Leave] expires, the employee should be terminated [on grounds of] Illness Benefits Expired . . . since it has already been determined that there will not be a return to work." On January 11, 2002, Mr. Lara had a conversation with Scott Emeola, a State Farm human resources representative. During the conversation, Mr. Emeola told Mr. Lara that "once [your] PSL runs out and [you] can't return to work without restrictions, [your] employment is terminated."

State Farm also had a policy which provided that "[i]f an employee believes an accommodation of a physical . . . impairment is needed to perform his . . . job, the employee should complete an Accommodation Request Form." State Farm required all accommodation requests to be made in writing to the ADA Accommodation Request Review Committee. Dr. Stephen Kindred, State Farm's medical director, was a member of the committee. Dr. Kindred's role was to serve as a medical consultant and to evaluate medical information presented.

On approximately January 11, 2002, Mr. Lara submitted a Regional Office Accommodation Request Form. On the form, he requested an accommodation of "no roof claims until directed by the doctor." On page 2 of the form, Mr. Lara stated that his "physical impairment is temporary" and that he could complete all job functions except carry a ladder and inspect and climb on roofs.

State Farm's ADA Accommodation Request Review Committee reviewed Mr. Lara's accommodation request on February 5, 2002. However, the committee did not

make a decision on the requested accommodation because Mr. Lara required additional surgery on February 9, 2002. When the committee reviewed Mr. Lara's request, it understood that Mr. Lara would be out of work for at least three months.

Mr. Lara had a conversation with Mr. Emeola on February 4, 2002 regarding whether Mr. Lara, after his upcoming surgery, would be eligible for unpaid medical leave when his paid sick leave expired. During the conversation, Mr. Lara asked Mr. Emeola whether he could use his accrued vacation time once his paid sick leave was exhausted. Thereafter, Mr. Emeola sent an e-mail to Annette Jackson, a State Farm human resources consultant, asking whether Mr. Lara could be given any additional leave once his paid sick leave was exhausted. Ms. Jackson replied that she was not in favor of making an exception to the illness benefits expired policy for Mr. Lara. Ms. Jackson had subsequent conversations about this subject with Mr. Emeola and Kelly Winslow, a State Farm assistant human resources manager, and repeated her opinion that an exception to the policy should not be made for Mr. Lara. Ms. Jackson testified in her deposition that they "weren't anticipating a return to work for approximately three months."

On February 13, 2002, Ms. Winslow sent an e-mail to Mr. Emeola stating that she understood that Mr. Lara's surgery on February 9 appeared to be successful and that "he would be back to work in a few months." On that same day, Todd Osborne, fire claim section manager, sent an e-mail to Bill Rieker, fire claim manager, recommending that Mr. Lara be terminated because his paid sick leave had run out and he was unable to

return to work without restrictions. In that e-mail, Mr. Osborne stated that "[Mr. Lara] will not be able to return to work without significant restrictions for an unknown amount of time. The most probable time period before he could perform all the Field Claim Representative job description is 3-6 months from now, although it is not known if he will ever be able to perform this job without restrictions."

After his third surgery on February 9, 2002, Mr. Lara could not carry a ladder, climb on roofs, stoop, crawl or sit at a desk and complete paperwork for a full workday.

Mr. Lara was terminated on February 16, 2002 because his illness benefits had expired and he was not able to return to work without restrictions. Steve Short, Vice President of Operations, made the final decision to terminate Mr. Lara's employment. Mr. Short knew at the time he made the decision, Mr. Lara was suffering from a disability. Mr. Short was not aware that Mr. Lara had requested additional leave in lieu of his termination. Mr. Short did not believe that he or anyone else at State Farm had any authority to grant Mr. Lara unpaid leave instead of terminating him when his illness benefits expired.

At the time of his termination, Mr. Lara had 252 hours of vacation time and 18.5 hours of personal time remaining. State Farm had a policy which precluded an employee from using paid vacation or personal time in lieu of paid sick leave. Mr. Lara was paid in full for his unused and accrued vacation and personal time.

On February 19, 2002, Mr. Emeola, Mr. Osborne and Rick Beckler went to Mr.

Lara's house to inform him that his employment with State Farm was terminated. During this meeting, Mr. Lara again asked whether he could be granted medical leave or take his accrued vacation time rather than be terminated. Mr. Emeola replied that neither option was allowed under State Farm policies.

At the time of his termination, Mr. Lara was unable to perform the essential duties of a fire claims specialist or fire claims representative. From February 16, 2002 until May 13, 2002, the period for which Mr. Lara received disability benefits, he was unable to perform the essential duties of his job.

Prior to his termination, Mr. Lara discussed with Mr. Emeola his interest in finding another position at State Farm. Specifically, he expressed interest in a newly-created position: Field Compliance Coordinator. Opportunities in that position were posted in February of 2002. Mr. Lara was not given one of those positions.

State Farm hired an individual to fill the opening created by Mr. Lara's termination. The individual who was hired commenced her employment in June of 2002. This individual was required to complete 3 to 4 months of training before handling claims.

Mr. Lara's treating physician, Dr. Raymond Grundmeyer, III, testified in his deposition that Mr. Lara was first able to return to work in an office setting on May 15, 2002. He testified that Mr. Lara could return to work with the following restrictions: (a) frequent or repetitive lifting, pushing, pulling, a maximum of 10 pounds;

(b) occasional lifting, pushing, pulling, a maximum of 20 pounds; (c) no prolonged sitting, standing, walking; (d) no excessive and/or repeated bending or twisting of the lower back; and (e) no kneeling, squatting, stooping, crawling and climbing.

From May 2002 to August 2002, State Farm had several positions open in Wichita. These included Agency Specialist positions in May and August, 2002, as well as Automotive Claims Specialist positions in June of 2002.

On August 8, 2002, Mr. Lara underwent a functional capability evaluation at Health South Rehabilitation Clinic. The results showed that as of that date Mr. Lara could perform light work for 8 hours per day.

II.     Standard of Review

We review the district court's grant of summary judgment *de novo*, viewing all evidence and any reasonable inferences that may be drawn therefrom in a light most favorable to the non-moving party. *Croy v. Cobe Laboratories, Inc.*, 345 F.3d 1199, 1201 (10th Cir. 2003). Summary judgment is appropriate only when the moving party shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994). To avoid summary judgment, the non-moving party "must establish, at a minimum, 'an inference of the existence of each element essential to the case.'" *Boykin v. ATC/VanCom of Colorado, L.P.*, 247 F.3d 1061, 1063 (10th Cir. 2001)(quoting *Hulsey*, 43 F.3d at 557). The non-moving party "'may not rest upon mere allegation or denials of his pleadings,

but must set forth specific facts showing that there is a genuine issue for trial.'" *Hulsey*, 43 F.3d at 557, (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)).

III.   Discussion

Under the ADA, employers are prohibited from discriminating against "a qualified individual with a disability" in employment actions.  42 U.S.C. § 12112(a).  The ADA defines a "qualified individual" as an employee who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  To qualify for relief under the ADA, a plaintiff must establish that: (1) he is a disabled person within the meaning of the ADA; (2) he is qualified, that is, with or without reasonable accommodation, he is able to perform the essential functions of the job; and (3) the employer terminated him because of his disability.  *White v. York Int'l Corp.*, 45 F.3d 357, 360-61 (10th Cir. 1995).

In the case before us, the district court found that Mr. Lara had demonstrated a genuine issue of fact as to his disability.  This court, for purposes of summary judgment review, assumes that Mr. Lara has established the first element of his claim.  We therefore turn to the second element, whether he is qualified.

This court has applied a two-part test for determining whether a person is qualified within the meaning of the ADA:

> First, we must determine whether the individual could perform the essential functions of the job, i.e. functions that bear more than a marginal relationship to the job at issue.  Second, if (but only if) we conclude that the individual is not able to perform the essential functions of the job, we must

determine whether any reasonable accommodation by the employer would enable him to perform those functions.

*Cisneros v. Wilson*, 226 F.3d 1113, 1128-29 (10th Cir. 2000)(quoting *Hudson v. MCI Telecommunications Corp.,* 87 F.3d 1167, 1168 (10th Cir. 1996)(other citations omitted)), *overruled on other grounds*, *Board of Trustees v. Garrett*, 531 U.S. 356 (2001).

The record reveals that, at the time he was terminated, Mr. Lara could not perform the essential functions of his position as Fire Claims Specialist or Fire Claims Representative. However, Mr. Lara argues that he is a "qualified" individual because there was a reasonable accommodation available which would have enabled him to perform his position. Specifically, Mr. Lara claims that State Farm should have provided him with three to six months of additional leave.

"It is well-settled that a request for leave may lead to a 'reasonable' accommodation – such a request may allow an employee sufficient time to recover from an injury or illness such that the employee can perform the essential functions of the job . . . in the future." *Cisneros*, 226 F.3d at 1129. The term "reasonable accommodation," however, refers to "'those accommodations which presently, or in the *near future*, enable the employee to perform the essential functions of his job.'" *Id*. (quoting *Hudson*, 87 F.3d at 1169)(emphasis in original). A request for indefinite leave therefore cannot constitute "reasonable accommodation" as "such a leave request does not allow the employee to perform the essential functions of the job in the *near future*." *Id*. (emphasis in original).

As stated, Mr. Lara contends that State Farm should have provided him with three to six months of additional leave. However, Mr. Lara's request for additional leave, as found by the district court, was essentially a request for an indefinite leave. There is no evidence in the record establishing that State Farm had reliable information in hand, prior to Mr. Lara's termination, as to the expected duration of Mr. Lara's *impairment*. "[T]his court has required an employee to provide an *expected duration of the impairment* (not the duration of the leave request)." *Cisneros*, 226 F.3d at 1130 (emphasis in original). There was no medical assessment provided to State Farm by Mr. Lara as to when he would be able to return to work and perform all the essential functions of his job. In his appellate briefing, Mr. Lara states his request was not indefinite because State Farm, at the time of termination, understood Mr. Lara would be able to return to work in three to six months. Mr. Lara specifically relies upon the e-mail by Mr. Osborne wherein he wrote that "the most probable time period before [Mr. Lara] could perform all the Field Claim Representative job description is 3-6 months from now . . . ." Defendant-Appellee's Supplemental Appendix - Volume I, p. 188. However, Mr. Osborne testified in deposition that this time estimation was his own and was based on the amount of time that Mr. Lara was gone from his first surgery. Defendant-Appellee's Supplemental Appendix -Volume III, p. 434-35, Deposition of Todd Osborne, p. 56, ll. 17-25, p. 57, ll. 1- 4. Mr. Lara also relies upon Ms. Jackson's deposition testimony that "[w]e weren't anticipating a return to work for approximately three months." Defendant-Appellee's

-10-

Supplemental Appendix - Volume II, p. 296, Deposition of Annette Jackson, p. 56, ll. 6-8. However, there is no indication in the record as to the basis for this testimony or as to any reason that we should conclude, in the face of her contemporaneous e-mail (discussed below), that this brief passage suffices to raise a triable issue of fact as to the state of the employer's knowledge, at the time of the events in question, as to the probable duration of Mr. Lara's disability. In her e-mail to Mr. Emeola on February 5, 2002, four days prior to Mr. Lara's surgery, Ms. Jackson stated that "[w]ith a totally unknown recovery period, I'm not in favor of an exception to [the illness benefits expired policy]." Defendant-Appellee's Supplemental Appendix - Volume I, p. 196. There is evidence in the record of an e-mail from Ms. Winslow on February 13, 2002, that Mr. Lara "would be back to work in a few months," and deposition testimony from Dr. Kindred, the medical consultant to the ADA Accommodation Request Review Committee, that Mr. Lara "would be out of work at least three months." Defendant-Appellee's Supplemental Appendix - Volume II, p. 248 and p. 341, Deposition of Stephen Lee Kindred, M.D., p. 16, ll. 1-7. There is no indication as to whether this information came from Mr. Lara, after discussions with his physician, Dr. Grundmeyer, or from Dr. Grundmeyer himself. Mr. Lara testified in deposition that Dr. Grundmeyer had not given him an approximate recovery date prior to his surgery and that he could not recall if Dr. Grundmeyer had given him an approximate recovery date after surgery. Defendant-Appellee's Supplemental Appendix - Volume I, p. 61, Deposition of Brian Lara, p. 149, ll. 17-25, p. 150, l. 1. In his deposition, Dr.

Grundmeyer testified that as of February 22, 2004, Mr. Lara's "end date/release to work date" was unknown and that "three months is a better time frame for evaluation." *Id.* at pp. 78-79, Deposition of Raymond Grundmeyer, III, M.D., p 52, ll. 19-25, p. 53, ll. 1-11.

*Rascon v. U.S. West Communications*, 143 F.3d 1324 (10th Cir. 1998), relied upon by Mr. Lara in briefing, is distinguishable from this case. In that case, the employee, prior to leaving employment to receive in-patient posttraumatic stress disorder treatment, told his supervisor the expected duration of his treatment was estimated at four months. In addition, the employee's treating physician provided a report indicating that the employee needed approximately four months to complete treatment. The employee's prognosis from his physician was also "good." *Rascon,* 143 F.3d at 1334. In this case, there is no evidence that State Farm was provided any information from Mr. Lara or Dr. Grundmeyer prior to termination of the expected duration of Mr. Lara's impairment. Nor is there any evidence in the record from Dr. Grundmeyer as to Mr. Lara's prognosis.

As we stated in *Cisneros*, "[w]ithout an expected duration of the impairment, an employer cannot determine whether the employee will be able to perform the essential functions of the job *in the near future* and therefore whether the leave request is a 'reasonable' accommodation." *Cisneros*, 226 F.3d at 1130 (emphasis in original). Because Mr. Lara failed to provide evidence to State Farm of the expected duration of his impairment prior to his termination, the court finds that Mr. Lara has failed to create a triable issue of fact as to the reasonableness of the requested leave. *Id.*

-12-

Mr. Lara also claims that State Farm failed to accommodate his disability because it failed to transfer or reassign him to a vacant position.  Where ADA relief is sought on this basis, plaintiff must show (in addition to ADA disability and performance capability) that the employer did not take reasonable steps to reassign the plaintiff to a vacant position or to a position the employer reasonably anticipated would become vacant in the "fairly immediate future."  *Bartee v. Michelin North America, Inc.*, 374 F.3d 906, 912 n. 4 (10th Cir. 2004).  In *Smith v. Midland Brake, Inc.*, 180 F.3d 1154 (10th Cir. 1999), the Tenth Circuit stated as follows:

> "[A] vacant position" includes not only positions that are at the moment vacant, but also, includes positions that the employer  reasonably anticipates will become vacate in the fairly immediate future.  *See*, *Monette* [*v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1187 (6th Cir. 1996)] ("If, perhaps, an employer knows that a position for which the disabled applicant is qualified will become vacant in a short period of time, the employer may be required to offer the position to the employee."); *see also*, EEOC Guidance [Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act], at 39 (" 'Vacant' means that the position is available when the employee asks for reasonable accommodation, or that the employer knows that it will become available within a reasonable amount of time.")

*Id*. at 1175; *see also*, *Bristol v. Board of County Commissioners of the County of Clear Creek*, 281 F.3d 1148,1168 (10th Cir. 2002)(quoting 29 C.F.R. pt. 1630, App., § 1630.2(*o*) "if '[t]he employer . . . *knows* that an equivalent position for which the individual is qualified [ ] will become vacant next week,' then that position should be considered "vacant" and the employer may have a duty to reassign the employee to that position when it becomes available") (emphasis in original), *vacated in part on other grounds*, 312

F.3d 1213 (10th Cir. 2002) (*en banc*).

In the instant case, Mr. Lara claims that there were a number of positions open in Wichita in May, June and August of 2002 for which he was qualified. However, as the district court properly found, there is an absence of any evidence in the record that State Farm knew of any of these positions when Mr. Lara was terminated. *See*, *Bristol*, 281 F.3d at 1168 ("[*Midland Brake*] makes clear that [an] aspect of whether a position is vacant involves the employer's subjective knowledge of upcoming opening.") There is no evidence in the record that State Farm knew or reasonably anticipated that any of the cited positions would be vacant at the time of plaintiff's termination.

Prior to his termination, Mr. Lara had expressed an interest to Mr. Emeola in an assignment to one of the newly-created Field Compliance Coordinator positions (first available in February of 2002). However, there is no evidence in the record that Mr. Lara was able to perform the essential functions of that job at the time it became available. Dr. Grundmeyer testified in his deposition that Mr. Lara was first able to return to an office setting on May 15, 2002. Defendant-Appellee's Supplemental Appendix - Volume I at p. 80, Deposition of Raymond Grundmeyer, III, M.D., p. 64, ll. 4-10. Therefore, Mr. Lara has failed to demonstrate a triable issue of fact with respect to whether there was a vacant position to which State Farm did not take reasonable steps to transfer or reassign him.

In sum, the record before the district court did not raise a triable issue as to Mr. Lara's termination and failure to accommodate claims under the ADA. The district court

therefore correctly granted State Farm's motion for summary judgment on Mr. Lara's claims.

Entered for the Court


Stephen P. Friot
District Judge