Sandra BROWN, Plaintiff,

v.

UNIFIED SCHOOL DISTRICT NO.
500, Kansas City, Kansas,
Defendant.

No. CIV.A.03–2402–CM.

United States District Court,
D. Kansas.

April 5, 2005.

Albert F. Kuhl, Lenexa, KS, for Plaintiff.

Bobby L. Brown, Kristopher A. Kuehn, J. Michael Grier, Warden Triplett Grier, PA, Overland Park, KS, for Defendant.

### MEMORANDUM AND ORDER

MURGUIA, District Judge.

Plaintiff Sandra Brown filed this action on August 7, 2003, alleging discriminatory denial of opportunities in violation of the Americans with Disabilities Act (ADA), 42 U.S.C § 12101 *et seq.*, retaliatory treatment in violation of the ADA[1], and breach of implied contract, all arising from her termination of employment from defendant Unified School District No. 500 in April 2002. This matter comes before the court on defendant's Motion for Summary Judgment (Doc. 45).

### I. Facts[2]

#### A. Plaintiff's Impairment

Plaintiff suffers from peripheral vascular insufficiency or peripheral arterial disease (PAD). Plaintiff's treating physician is Dr. Charles Sciolaro, a cardiovascular surgeon. Dr. Sciolaro diagnosed plaintiff with PAD in 2002. According to Dr. Sciolaro, when a person suffers from PAD, an artery is blocked that supplies blood to the tissues. When the tissues don't get enough blood supply, they become oxygen-starved and pain can develop in affected areas such as the heart, brain and legs. Dr. Sciolaro contends that PAD is chronic in nature and is treatable but not curable. The condition can worsen over time and can be life threatening.

PAD is the only disability from which plaintiff claims she suffers. Plaintiff claims that PAD results as a hardening or clogging of the arteries in her legs. Plaintiff claims that she is substantially impaired in her ability to: walk; run; climb, including going up and down stairs; shower and dress; do household chores, including cleaning, laundry, cooking and errands; crawl and kneel; lift and carry heavy objects; stand; and exercise. Plaintiff generally alleges that she tires easily; has had to readjust her way of thinking and the way she does things; it takes her longer to do things; and she cannot function like she used to as a result of her PAD. Plaintiff maintains that she continues to suffer from PAD.

During her deposition in this case, plaintiff claimed that she walked at a slow pace and limped at times, but at other times she was able to quicken her gait and walk faster. Plaintiff also testified that she was experiencing these limitations in April 2002 because she was recovering from surgery. In her affidavit submitted with her opposition to summary judgment, plaintiff contends that, in Spring 2002, she was in extreme pain whenever she attempted to walk, and her legs were weak. Plaintiff claims that, as of November 2004, her ability to walk has been limited by a limp and because she tires easily. Plaintiff claims that she walks at a slow pace and

---

**1.** On February 5, 2004, defendant filed a motion to dismiss, arguing, in part, that plaintiff's claim for compensatory damages for retaliatory treatment is barred if plaintiff is pursuing her claim under 42 U.S.C. § 12203. Based on the manner in which plaintiff's complaint was pled, it was unclear under which provision of the ADA plaintiff brought Count II of her complaint alleging retaliatory treatment. This court gave plaintiff the opportunity to amend her complaint in order to clarify under which section of the ADA plaintiff was bringing Count II. Plaintiff elected not to amend her complaint. Accordingly, per the court's June 8, 2004 Order, the court has assumed, and the parties agree, that Count II is brought pursuant to 42 U.S.C. § 12112(b).

**2.** The court construes the facts in the light most favorable to plaintiff as the nonmoving party pursuant to Fed.R.Civ.P. 56.

cannot walk for a very long distance; has to climb stairs slowly; and that it takes her longer to shower and get dressed.

### B. Plaintiff's Position with Defendant

Plaintiff was employed as a secretary by defendant from 1996 through 2002. All secretaries for defendant are required to work their entire shift at the school or administration building where they are assigned. At the time of her termination of employment, plaintiff's position was secretary to Assistant Superintendent for Student/Parent/Community Services, James White. Plaintiff's responsibilities in this position included, among other things, answering the phone and receiving visitors at student services, sorting and distributing mail, and providing clerical support to other defendant employees. During her employment with defendant, plaintiff was able to perform her physical job duties without difficulty. It is undisputed that defendant did not have concerns about the quality of plaintiff's work.

### C. Defendant's Leave Policies

Under School Board policies, certain of defendant's employees are eligible for up to twelve weeks of leave under the Family and Medical Leave Act (FMLA). Plaintiff was familiar with School Board policies regarding leave and had received a copy of defendant's policy book.

Under defendant's policies, if an employee has accrued sick, vacation and/or personal days, defendant exhausts that paid leave first before placing the employee on unpaid leave during the twelve week FMLA period. Defendant contends that, under its policies, while a portion of FMLA leave could be paid, depending on whether an employee had accrued paid leave time, no FMLA-eligible employee working in the district for a year or more would receive more than twelve weeks total FMLA leave, including paid and unpaid

leave time. Defendant admits that other employees have received a leave of absence as an accommodation under the ADA that is longer than the twelve week FMLA period where the employee could provide a definite date of return to work.

### D. Plaintiff's Leave under the FMLA

In early 2002, plaintiff sought medical treatment for her PAD from Dr. Sciolaro. Plaintiff went on medical leave for surgery beginning February 4, 2002. Plaintiff took FMLA leave for the surgery because she would be unable to perform the essential functions of her job. Plaintiff's surgery was to relieve pain in her legs caused by her PAD. Plaintiff's period of leave under the FMLA was for inpatient surgery and was to last six to twelve weeks. According to her health provider, plaintiff's condition would not require further treatment beyond her FMLA leave. Plaintiff received a leave period of twelve weeks.

### E. Plaintiff's 2002 Surgeries

Plaintiff claims that, when she began surgical treatment for her condition in 2002, she was having great difficulty walking. Plaintiff claims that she was in extreme pain whenever she attempted to walk, her legs were weak, and she did not walk more than a few steps at a time.

Plaintiff had at least seven in-hospital stays in 2002 related to surgeries to relieve the pain in her legs. Dr. Sciolaro performed all seven of plaintiff's 2002 surgeries. The first occurred on or about February 5, 2002, when plaintiff had a left femoral popliteal bypass on her left leg. Plaintiff was pleased with the results of her February 5, 2002 surgery and had the same surgery on her right leg on March 27, 2002. As a result of the surgeries on plaintiff's legs, plaintiff developed numerous complications requiring additional sur-

geries. The last surgery occurred on or about August 9, 2002.

Plaintiff contends that, although the surgeries she went through in 2002 provided her some short-term relief for her walking impairment, her ability to walk has never been fully restored and she continues to suffer from limitations in her ability to walk. However, Dr. Sciolaro testified at his September 16, 2004 deposition that plaintiff's 2002 surgeries had reduced the pain in plaintiff's legs, and that, although plaintiff was still complaining of some problems with her legs, plaintiff was doing well and walking, talking visiting family and traveling when he saw her in April/May 2004.

### F. Plaintiff's Request for Additional Leave

On April 18, 2002, Ron Clark, defendant's Director of Classified Personnel at that time, sent plaintiff a letter informing her that her FMLA leave was set to expire on April 29, 2002.

On April 26, 2002, Dr. Sciolaro sent a note to Mr. Clark requesting an additional leave period of four to six weeks for plaintiff. In his note, Dr. Sciolaro stated that plaintiff's return to work was "to be determined."

On April 29, 2002, Mr. Clark sent plaintiff a letter informing plaintiff that Mr. Clark had received the note from her doctor requesting that her leave be extended for four to six weeks. Mr. Clark also confirmed his prior conversation with plaintiff, on April 26, 2002, during which he informed plaintiff that she would need to return to work by April 29, 2002, submit a letter of resignation, or be terminated for failure to return from leave. Plaintiff did not return to work by April 29, 2002.

On May 8, 2002, plaintiff sent a letter to Dr. Ray Daniels, defendant's Superintendent, stating that she was under a doctor's care and would be unable to return to work for at least six weeks. In the letter, plaintiff told Dr. Daniels that she had exhausted her vacation and sick leave, and asked Dr. Daniels whether her FMLA leave also had been exhausted. Plaintiff requested that defendant recalculate her vacation, sick and FMLA leave, and extend her unpaid health leave for six weeks. Plaintiff testified at her deposition that she requested additional leave because she was recovering from surgery; in her affidavit in support of her opposition to summary judgment, plaintiff claims she requested additional leave because her initial surgery did not resolve all of her problems with the PAD; in her opposition to summary judgment, plaintiff claims that she requested additional leave because of her medical condition and ongoing treatment needs.

### G. Termination of Plaintiff's Employment

At its May 14, 2002 meeting, the Board of Education voted to terminate plaintiff's employment with defendant, effective April 29, 2002. The same day, Dr. Daniels sent plaintiff a letter stating that plaintiff had used all of her vacation and sick time, and that she had exhausted her FMLA leave. Dr. Daniels also invited plaintiff to reapply for an employment position when she was able to return to work.

On May 15, 2002, Linda Murray, Assistant Superintendent for Personnel, sent plaintiff a letter informing her that her employment had been terminated and that she had the right to request a termination hearing. Plaintiff did not request a termination hearing and never reapplied for a job with defendant. After her termination, plaintiff's former supervisor, James White, encouraged plaintiff to reapply for her job.

It is undisputed that plaintiff's job performance was not a factor in her termination of employment. Defendant con-

tends that it terminated plaintiff's employment because she did not return to work at the expiration of her sick leave, as required by defendant's attendance policy, and because it could not make exceptions to the attendance policy in a case where defendant did not believe the ADA was implicated. Ms. Murray testified that defendant would have been willing to discuss extension of plaintiff's leave time as an accommodation under the ADA if there had been any indication that plaintiff's condition implicated the ADA. It is uncontroverted that defendant did not talk with plaintiff about her condition and its affect upon her in order to determine whether the ADA may have applied to her situation

Plaintiff claims that defendant terminated plaintiff's employment because of its intention to discriminate against her due to her disabling condition, and/or its intention to retaliate against her for having made a request for reasonable accommodation in the form of health leave. Plaintiff further contends that defendant's written leave policy gives defendant's Superintendent the authority to grant an employee leave time exceeding the FMLA-mandated leave of twelve weeks. Defendant contends, and Ms. Murray testified during her deposition, that the provision of defendant's written leave policy allowing for an additional twenty days of leave applies only to employees ineligible for FMLA leave, and that the policy allows those ineligible for FMLA leave to exhaust any paid leave and then request an additional twenty days of unpaid leave.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *see Adler,* 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler,* 144 F.3d at 671. "To accomplish this, the facts must be

identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut," rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## III. Discussion

### A. Plaintiff's ADA Claims

Plaintiff claims that she was subjected to unlawful discrimination and harassment based on her alleged disability, and that defendant failed to reasonably accommodate her disability by granting her unpaid leave time beyond her FMLA leave. Defendant claims that plaintiff has not met her prima facie case under the ADA and that her claims should be dismissed.

■ The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Discrimination under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless ... the accommodation would impose an undue hardship...." *Id.* § 12112(b)(5)(A). A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual

holds or desires." *Id.* § 12111(8). Thus, to establish a prima facie case [3] under the ADA, plaintiff must demonstrate (1) that she is "disabled" within the meaning of the ADA; (2) that she is qualified—with or without reasonable accommodation; and (3) that she was discriminated against because of her disability. *Siemon v. AT&T Corp.*, 117 F.3d 1173, 1175 (10th Cir.1997).

### 1. Whether Plaintiff is Disabled Under the ADA

Defendant argues that plaintiff is not disabled within the meaning of the ADA. The ADA defines the term "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); *Tate v. Farmland Indus., Inc.*, 268 F.3d 989, 992 (10th Cir.2001). Plaintiff contends that she suffers from PAD, that the PAD substantially limits her major life activity of walking, and that she is disabled within the meaning of the ADA. Plaintiff does not argue that she has a record of such an impairment or that defendant regarded her as having such an impairment. Accordingly, the court focuses on the first prong of the analysis to determine whether plaintiff is disabled under the ADA.

■ First, the court must determine whether plaintiff suffers from a physical or mental impairment. *Bragdon v. Abbott*, 524 U.S. 624, 631, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998). Next, the court must identify the life activities affected by the impairment and whether those activities qualify as major life activities under the ADA. *Id.* Finally, the court must deter-

---

**3.** Because plaintiff brings both of her ADA claims under 42 U.S.C. § 12112, she must establish the same prima facie case for both claims. *See Riggs v. Boeing Co.*, 98 F.Supp.2d 1252, 1257 (D.Kan.2000).

mine whether the impairment substantially limits the identified major life activities. *Id.* Whether the plaintiff has an impairment under the ADA and whether the identified activity is a major life activity are questions of law for the court. *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1129 (10th Cir.2003). Whether the impairment substantially limits the major life activity is normally a question of fact for a jury. *Id.* However, "in proper circumstances a court may decide this step on a motion for summary judgment." *Id.* at 1130 n. 5 (citing *Bristol v. Bd. of County Comm'rs of County of Clear Creek*, 281 F.3d 1148, 1161 n. 5 (10th Cir.2002)).

Here, the parties agree that plaintiff suffers from PAD. Plaintiff contends that her major life activity of walking has been substantially limited due to the PAD.[4] Walking qualifies as a major life activity under the ADA. 29 C.F.R. § 1630.2(i) (defining "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working").

The issue for this court is whether plaintiff's walking is substantially limited by her PAD. A person is substantially limited in a major life activity if she is: (i) unable to perform a major life activity that the average person in the general population can perform; or (ii) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1); *Lusk v. Ryder Integrated Logistics*, 238 F.3d 1237, 1240 (10th Cir.2001). Impairments that interfere in only a minor way

with a major life activity do not qualify as disabilities. *Toyota Motor Mfg., Ky., Inc., v. Williams*, 534 U.S. 184, 198, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). In determining whether an impairment substantially limits a major life activity, the court should consider: (i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2); *Steele v. Thiokol Corp.*, 241 F.3d 1248, 1254 (10th Cir.2001). Whether an impairment substantially limits a major life activity is determined on an individual, case-by-case basis. *Rakity v. Dillon Cos., Inc.*, 302 F.3d 1152 (10th Cir. 2002).

Where an impairment is not so severe that it is substantially limiting on its face, an ADA plaintiff must present "evidence comparing her ... restrictions to that of an average person." *Velarde v. Associated Reg'l & Univ. Pathologists*, 61 Fed.Appx. 627, 629, 2003 WL 1736400, at *2 (10th Cir.2003) (citing *Lusk*, 238 F.3d at 1240). "[U]nless an ADA plaintiff can show that [her] impairment reduces [her] capabilities significantly below those of the average person, [she] is not deemed 'disabled' under the Act." *Id.*

Defendant contends that plaintiff's impairment is not severe because she was able to fully perform the functions of her position before she underwent the seven surgeries in 2002, and that plaintiff's limitation in her life activity of walking in 2002 was due to her decision to undergo surgery. Defendant notes plaintiff's testimony that, while she had bad days before the surgeries, she was able to function. Defendant points out that plaintiff was most

---

**4.** In her opposition to summary judgment, plaintiff states that she is relying solely on the life activity of walking as the basis of her ADA claim. Accordingly, the court addresses only that major life activity in analyzing defendant's motion.

limited in her ability to walk during her recovery from the seven surgeries in 2002. Defendant cites several cases in support of its position that a temporary impairment that is a result of a surgery-related absence from work does not qualify as a disability under the ADA. Defendant further contends that, in the absence of sufficient evidence to demonstrate that plaintiff is substantially limited in her ability to walk, plaintiff must provide evidence comparing her walking capability to that of an average person, which she has failed to do.

However, plaintiff contends that, when she went on medical leave in 2002, she was in extreme pain when she attempted to walk, her legs were weak, and she could walk only a few steps, all as a result of the PAD inhibiting the circulation of blood to her legs. As a result, plaintiff sought the surgeries that were performed by Dr. Sciolaro. Plaintiff maintains that, since the surgeries, her overall ability to walk, while somewhat improved, is still limited and has not improved in any meaningful way. Plaintiff contends that an individual who can walk for only brief periods of time is "substantially limited" in the activity of walking under the ADA. Plaintiff also cites *Aldrich v. Boeing Co.*, 146 F.3d 1265, 1270 (10th Cir.1998) in support of her position that a severe, non-permanent condition may rise to the level of a disability under the ADA where the duration of the condition is indefinite and unknowable or is expected to last at least several months.

While the court believes that plaintiff has set forth minimal medical evidence in support of her position that her major life activity of walking is substantially limited, viewing the evidence in a light most favorable to plaintiff, the court finds that a reasonable jury could conclude that plaintiff's impairment, rather than her surgeries, severely restricted her ability to walk and that the impairment was long-term or indefinite in duration. Plaintiff's impair-

ment became most severe in 2002 and lasted through most of 2002, plaintiff had no certain recovery date when her employment was terminated in April 2002, and plaintiff contends that her ability to walk remains limited. Accordingly, the court finds that the record creates genuine issues of fact regarding whether plaintiff had a disability within the meaning of the ADA.

### 2. Whether Plaintiff Is a Qualified Individual with a Disability

The ADA prohibits a covered entity from discriminating against a "qualified individual with a disability" because of the individual's disability with respect to terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a). The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Pack v. Kmart Corp.*, 166 F.3d 1300, 1302 (10th Cir.1999) (quoting 42 U.S.C. § 12111(8) and citing *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir.1995)).

■ It is undisputed that plaintiff could not perform the essential functions of her job at the time of her termination. Since plaintiff could not perform the essential functions of her job, the court must determine whether she could perform the essential functions of her job with reasonable accommodation. *See York Int'l*, 45 F.3d at 361–62. Plaintiff bears the burden to produce evidence that accommodation is possible. *See id.* at 361. Plaintiff contends that she requested a reasonable accommodation for her disability in the form of an extended leave of absence after her FMLA leave expired, which defendant denied.

■ The Tenth Circuit has expressly recognized a leave of absence as a form of

reasonable accommodation under the ADA. *Cisneros v. Wilson,* 226 F.3d 1113, 1129 (10th Cir.2000); *Hudson v. MCI Telecomms. Corp.,* 87 F.3d 1167, 1168 (10th Cir.1996). However, a request for indefinite leave cannot constitute "reasonable accommodation" as "such a leave request does not allow the employee to perform the essential functions of the job in the *near future.*" Hudson, 87 F.3d at 1169 (emphasis in original).

Plaintiff contends that both she and Dr. Sciolaro specified the length of time she needed to extend her leave of absence. Plaintiff contends that she verbally requested a six-week extension of leave when she spoke with Mr. Clark on April 26, 2002. The same day, Dr. Sciolaro wrote a note to Dr. Clark requesting that plaintiff receive four to six weeks of additional leave. Plaintiff further requested an additional six weeks of leave in her May 8, 2002 letter to Dr. Daniels. However, prior to her April 29, 2002 termination, plaintiff gave no specific date when she would return to work and resume her duties with defendant. Dr. Sciolaro's April 26, 2002 note, while requesting an additional four to six weeks of leave, noted that plaintiff's return date was "to be determined."

"[C]ourts have uniformly held that employers are not obligated to retain a disabled employee on unpaid leave indefinitely or for an excessive amount of time." *Lara v. State Farm Fire & Cas. Co.,* 2003 WL 22149667 at *11, (D.Kan. July 24, 2003) (*aff'd,* 121 Fed.Appx. 796, 797, 2005 WL 288819 at *1 (10th Cir.2005)). Moreover, the Tenth Circuit has stated that "this court has required an employee to provide an *expected duration of the impairment* (not the duration of the leave request)." *Lara,* at 801, 2005 WL 288819 at *5 (quoting *Cisneros,* 226 F.3d at 1130) (emphasis in original).

At the time of plaintiff's termination, defendant had no information regarding when plaintiff would be able to return to work or the expected length of plaintiff's impairment. It is undisputed that plaintiff had five more surgeries after her employment was terminated, with the last occurring in August 2002, well beyond the six additional weeks plaintiff requested in May 2002. There is no indication in the record that plaintiff would have been able to return to work before August 2002. Moreover, plaintiff maintains that she still suffers from her impairment.

Accordingly, the court believes that plaintiff's ADA claims fail because no jury could find that defendant failed to reasonably accommodate any physical impairment from which plaintiff suffered. The evidence in the record shows that plaintiff requested and was placed on a medical leave of absence. Because plaintiff failed to provide defendant with an expected duration of her impairment prior to her termination of employment, much less a date when she could return to work, the court finds plaintiff has failed to create a genuine issue of fact regarding the reasonableness of an extended leave of absence as an accommodation. *See Lara,* at 802, 2005 WL 288819 at *6 (similar holding); *see also Cisneros,* 226 F.3d at 1130 ("[w]ithout an expected duration of the impairment, an employer cannot determine whether the employee will be able to perform the essential functions of the job *in the near future* and therefore whether the leave request is a 'reasonable' accommodation." (emphasis in original)).

Accordingly, the court finds that plaintiff is not a qualified individual with a disability under the ADA, and defendant is entitled to summary judgment on plaintiff's ADA claims.

## B. Plaintiff's State Law Implied Contract Claim

The court may, in its discretion, exercise supplemental jurisdiction over plaintiff's

state law implied contract claim if it is sufficiently related to a pending claim over which the court has original jurisdiction. *See* 28 U.S.C. § 1367(a). Plaintiff asserted ADA claims over which this court has original jurisdiction under 28 U.S.C. § 1331.

However, the court need not exercise supplemental jurisdiction and may decline to do so under § 1367(c) if the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). Here, the court has dismissed plaintiff's ADA claims, over which it had original jurisdiction. Consequently, this court, in its discretion, declines to exercise supplemental jurisdiction over plaintiff's state law implied contract claim and hereby dismisses it without prejudice.

**IT IS THEREFORE ORDERED** that defendant's Motion for Summary Judgment (Doc. 45) is granted.

**IT IS FURTHER ORDERED** that this case is dismissed.